## In re MOUNTAIN STATES POWER CO.

### No. 1286.

District Court, D. Delaware.
July 25, 1940.

William H. Foulk (of Satterthwaite and Foulk), of Wilmington, Del., Harris &

Bryson, of Eugene, Or., and Pope & Ballard, of Chicago, Ill., for debtor.

George S. Munson (of Townsend, Elliott & Munson), of Philadelphia, Pa., and John J. Morris, Jr. (of Hering, Morris, James & Hitchens), of Wilmington, Del., for preferred stockholders' committee.

Ropes, Gray, Boyden & Perkins, of Boston, Mass., and Hugh M. Morris, of Wilmington, Del., for bondholders' protective committee.

Carl S. Stern, Arthur J. Buswell, and Ralph C. Binford, all of Washington, D. C., for Securities and Exchange Commission.

NIELDS, District Judge.

Debtor is engaged principally in the sale of electric power in 109 communities in Oregon, Montana, Idaho and Washington.

December 31, 1937, debtor filed its petition under section 77B of the Bankruptcy Act, 11 U.S.C.A. § 207, and was continued in possession. Debtor's bonds, roughly of $8,200,000, would mature January 1, 1938, and debtor was unable to refinance them. Other matters, particularly an open account indebtedness, led to reorganization. Two protective committees were formed, the bondholders and the preferred stockholders.

As of December 31, 1937, debtor's capitalization consisted substantially as follows:

(a) $8,200,000 of bonds, of which $1,340,000 bore 5% interest coupons and $6,840,000 6% coupons.

(b) $7,000,000 of open account indebtedness to Standard Gas and Electric Company, the parent of debtor.

(c) $5,300,000 of 7% cumulative preferred stock, $100 par, with arrearages of $36 a share or $1,900,000.

(d) 142,500 shares of no par common stock, 62% of which was owned by Standard Gas and Electric Company and 18% by Standard Power and Light Corporation, the parent of Standard Gas.

May 22, 1937 the joint plan of the bondholders' committee, preferred stockholders' committee and of the debtor was filed. Acceptances of the plan were solicited and by November 15, 1939, two-thirds of the bondholders and a majority of each class of stockholders had accepted. Thereafter the preferred stockholders' committee and the debtor filed an amendment to the plan for a private placement of securities at a lower rate of interest than 5%. February 5, 1940, the amended plan was confirmed.

■ This reorganization was successful. The open account was eliminated from the capital structure. $7,500,000 of 4-1/4% bonds and $600,000 of 3% notes replaced the $8,200,000 of 5% and 6% bonds. Interest charges were reduced approximately $140,000 per year without considering interest on the open account. The arrears on the preferred stock were eliminated. Parties negotiating such a reorganization are entitled to fair compensation.

The chief difficulty to reorganization was the debt appearing in the open account between Standard, the parent company, and debtor. Of course, both protective committees and debtor were eager for a settlement of this account. December 9, 1937, the Oregon commissioner stopped payment upon the open account and even stopped the accrual of interest. He was probably induced so to do by the president of debtor. Haskins & Sells and Arthur Young & Company had prepared financial statements respecting the account. A representative of the Oregon commissioner and an employe of debtor made an analysis of the account set forth in two large volumes. The preferred stockholders' committee employed Sparling, a Seattle certified public accountant. He had access to the previous work of accountants and made a report on the illegal aspects of dividends paid by debtor. Apparently Sparling was the first to suggest this illegality.

Moreover, there was pending in the Supreme Court the case of Taylor v. Standard Gas & Electric Company, 306 U.S. 307, 59 S.Ct. 543, 83 L.Ed. 669, where Standard was shown to have an open account with another subsidiary, Deep Rock Oil Company. Plaintiff in that case afforded Munson all the Deep Rock briefs which enabled him and Foulk, one of the attorneys of the debtor, to file exceptions to the Standard claim. The open account was never litigated but after the decision the Deep Rock case was satisfactorily adjusted.

The reorganization presented three major problems:

1. Making a fair and up-to-date appraisal of the properties of the debtor.

2. Promulgating a fair and feasible plan of reorganization involving a recapitalization of debtor.

3. Evaluating the indebtedness of debtor to Standard Gas and Electric Company, the parent of debtor, which stood on the books of debtor at approximately $7,000,000 principal, and accrued interest.

The applicants for allowances number 31. The allowances requested aggregate $311,746.54 for compensation and $33,714.-60 for disbursements—a total of nearly $350,000. Twenty-one persons are representatives of debtor, preferred stockholders' committee and bondholders' committee. Their services cover two years and four months dating approximately from the date the petition for reorganization was filed. The chief difficulty with the twenty-one applications is that each applicant, to a certain extent, is claiming compensation for rendering the same service without fully attributing to others and to other contributing causes the credit for the completed service.

Five law firms represented the debtor and two committees. Doubtless each law firm made a contribution in solving the major problems. However, their services were greatly aided by the upward trend of the market and by a decision of the Supreme Court of the United States. The other eleven applicants are asking compensation, in large part, for services in carrying out the plan of reorganization, setting up the new corporation as provided in the plan, and in distributing the new securities.

Three petitions for allowances and expenses may be barred by Section 249 of the Chandler Act, 11 U.S.C.A. § 649. That act was passed June 22, 1938, and became effective September 22, 1938. The reorganization petition was approved some months before June 22, 1938. Section 249 provides: "Sec. 249 [§ 649]. Any persons seeking compensation for services rendered or reimbursement for costs and expenses incurred in a proceeding under this chapter shall file with the court a statement under oath showing the claims against, or stock of, the debtor, if any, in which a beneficial interest, direct or indirect, has been acquired or transferred by him or for his account, after the commencement of such proceeding. No compensation or reimbursement shall be allowed to any committee or attorney, or other person acting in the proceedings in a representative or fiduciary capacity, who at any time after assuming to act in such capacity has purchased or sold such claims or stock, or by whom or for whose account such claims or stock have, without the prior consent or subsequent approval of the judge, been otherwise acquired or transferred."

The section prescribes a hard and fast rule of conduct for fiduciaries or representatives. It deprives the fiduciary or representative of compensation no matter how great the hardship. It applies whether the purchases or sales resulted in a profit or a loss. The court has no authority to relieve the fiduciary or representative from the provisions of the statute. Purchases and sales must be reported if the fiduciary asks for compensation.

"If they are the usual, voluntary purchases and sales, occurring during the proceeding after acceptance of the trust, allowance of compensation is prohibited without qualification. The existence of good or bad faith, the fact that there is, on the face of the transaction, a profit or a loss, is immaterial. No approval by the judge can alter the situation. It is doubtless true that the statute, thus construed, may work a hardship in some cases—as in this; but such sporadic cases are inconsiderable compared to the large object sought to be achieved by the law, which is to fix a standard of conduct by persons acting in fiduciary capacities, in these cases, so high as to prevent any possible clash between selfish interest and faithful performance of duty." Otis & Co. v. Insurance Bldg. Corporation, 1 Cir., 110 F.2d 333, 335.

The principle prohibiting fiduciaries or representatives from taking advantage of inside information to make a profit had been laid down in two important reorganization cases. In re Paramount-Publix Corporation, D.C., 12 F.Supp. 823; In re Republic Gas Corporation, 35 F.Supp. 300.

David S. Soliday, a partner in Hopper, Soliday & Company and chairman of the preferred stockholders' committee.

Petitioner asks $30,000 fees and $3,-856.94 disbursements. He is one of three partners in the firm of Hopper, Soliday & Company, dealers in investment securities. He rendered substantial services throughout the period of reorganization. In the past the firm had bought and sold securities of the debtor for its own account. After Soliday became a member of the preferred stockholders' committee he gave orders to his office not to trade in the securities of the debtor and intended thereby to limit the firm to buying and selling on orders of customers. Transactions of the firm after Soliday became a committee member are set forth in a foot note.[1]

The last three transactions therein listed occurred after the passage of the Chandler Act; the last two after the act became effective.

All the transactions took the form of purchases and sales by the firm. As to the transactions that occurred before the passage of the Chandler Act Soliday testified that he knew of the decisions in the Paramount and Republic cases and thought by instructing his office to purchase and sell only on order of a customer he was safe. He assumed that those cases applied only where a person purchased or sold for his own profit. Although his firm purchased or sold on order of a customer the firm expected to make a

---

[1] PREFERRED STOCK

| Date | Shares Purchased | Price | Amount | Shares Sold | Price | Amount | Profit or Loss |
|---|---|---|---|---|---|---|---|
| 1–12–38 | 39 | 16-3/4 | $ 653.25 | | | | |
| 1–13–38 | 200 | 17 | 3,400.00 | | | | |
| 1–17–38 | 50 | 19 | 950.00 | | | | |
| " | 25 | 19-1/2 | 487.50 | | | | |
| " | 5 | 19-3/4 | 98.75 | | | | |
| " | 25 | 20 | 500.00 | | | | |
| 1–19–38 | 25 | 16-1/4 | 406.25 | 100 | 18-1/2 | $ 1,850.00 | |
| 1–20–38 | | | | 100 | 19-1/2 | 1,950.00 | |
| " | | | | 20 | 20-1/2 | 410.00 | |
| " | | | | 24 | 22 | 528.00 | |
| 2–18–38 | | | | 125 | 16-1/2 | 2,062.50 | |
| 5–13–38 | 90 | 20 | 1,800.00 | 65 | 20-3/4 | 1,348.75 | |
| " | | | | 25 | 21 | 525.00 | |
| 5–17–38 | 55 | 20 | 1,100.00 | 55 | 20 | 1,100.00 | |
| 8–12–38 | 30 | 26-3/8 | 791.25 | 30 | 26-3/8 | 791.25 | |
| 10–25–38 | 24 | 28 | 672.00 | 24 | 28 | 672.00 | |
| 11– 9–38 | 12 | 31-1/2 | 378.00 | 12 | 31-1/2 | 378.00 | |
| | 580 | | $11,237.20 | 580 | | $11,615.50 | 378.30 |

BONDS

| Date | Principal Amount Purchased | Price | Amount | Principal Amount Sold | Price | Amount | |
|---|---|---|---|---|---|---|---|
| 2–18–38 | 5,000 | 75 | 3,750.00 | 1,000 | 78-1/4 | 782.50 | |
| " | 2,000 | 75-1/4 | 1,505.00 | | | | |
| 2–23–38 | 3,000 | 76-1/2 | 2,295.00 | 1,000 | 76-1/4 | 762.50 | |
| " | 1,000 | 76-3/4 | 767.50 | | | | |
| 2–25–38 | 1,000 | 77-1/2 | 775.00 | 4,000 | 78-1/4 | 3,130.00 | |
| " | 2,000 | 79-1/2 | 1,590.00 | 1,000 | 78-3/4 | 787.50 | |
| " | 2,000 | 79-3/4 | 1,595.00 | 2,000 | 79 | 1,580.00 | |
| " | 3,000 | 80 | 2,400.00 | | | | |
| 3–1–38 | | | | 1,000 | 79 | 790.00 | |
| 3–2–38 | | | | 2,000 | 78-1/4 | 1,565.00 | |
| " | | | | 2,000 | 65 | 1,300.00 | |
| 3–31–38 | | | | 3,000 | 67 | 2,010.00 | |
| " | | | | 2,000 | 69 | 1,380.00 | |
| 5–19–38 | 1,000 | 80 | 800.00 | 1,000 | 80 | 800.00 | |
| | 20,000 | | $15,477.50 | 20,000 | | $14,887.50 | (590.00)* |
| | | | | | | | (211.70)* |

* ( ) Indicate loss.

small profit. Soliday testified this was their normal practice for they rendered more than the regular service of a broker to their customers some of whom they had been serving for generations. The normal commission for sales in small lots would not compensate for the services rendered. Thus the listed transactions before the passage of the Chandler Act were undertaken for some compensation by way of profit, the amount thereof being controlled by the investment house.

■ Transactions after the passage of the act were done on orders of customers and without any compensation to the firm. However, the transactions took the form of purchases and sales by the firm instead of appearing on the books as done by an agent or broker. If the fiduciary can make a profit out of the activities of his clients instead of trading himself the standard of conduct prescribed by Section 249 would be evaded. After the effective date of the act Soliday gave express instructions that all transactions by his firm in securities of the debtor were to be handled as brokerage transactions and were never to be set up on the books as purchases and sales. Yet the record shows that the transactions above referred to were listed on the books as purchases and sales in violation of his instructions. Nevertheless, the record is proof of purchases and sales prohibited by section 249. All fees and expenses of the petitioner David S. Soliday must be disallowed.

E. B. Williamson, president of the Bank of Albany at Albany, Oregon.

■ Petitioner asks $2,500 for services and $245.97 for disbursements. In January, 1940, he sold 15 shares of the stock which he had acquired before he became a member of the committee. He did this to pay a note that was due. He was not familiar with the Chandler Act and he deemed his work had been completed at the time of the sale. However, Williamson sold the stock after he became a committeeman and after the passage of the Chandler Act and after the approval of the plan of reorganization but before its confirmation. Williamson's conduct is within the terms of section 249 and the court is without power to allow him compensation for his services or disbursements.

Thomas E. Young of Portland, Oregon.

■ Petitioner claims no compensation but asks $671.51 for disbursements. Young bought 300 shares of preferred stock on March 31, 1939 at 45. He sold 50 shares on June 19, 1939, at 60. He bought 50 shares on June 27, 1939, at 58. He sold 100 shares on June 30, 1939, at 56 and sold 100 shares on July 10, 1939, at 57. The last three transactions occurred after the passage of the Chandler Act but before it became effective. Young's transactions resulted in a substantial profit. Under section 249 neither compensation for services or reimbursements can be allowed.

After consideration of the petitions, the testimony and briefs the following allowances of fees and expenses will be made by the court:

|  | Fees | Expenses |
|---|---|---|
| Satterthwaite and Foulk (Delaware) Attorneys for debtor. | $15,000.00 | $2,536.86 |
| Pope & Ballard (Chicago) Attorneys for debtor. | 10,000.00 | 6,515.73 |
| Harris & Bryson (Oregon) Attorneys for debtor. | 5,000.00 | 2,364.66 |
| Ropes, Gray, Boyden & Perkins (Massachusetts) Attorneys for bondholders' committee | 7,500.00 | 1,599.13 |
| Hugh M. Morris (Delaware) Attorney for bondholders' committee | 250.00 | .... |
| Townsend, Elliott & Munson (Philadelphia) Attorneys for preferred stockholders' committee | 10,000.00 | 2,155.92 |
| Hering, Morris, James & Hitchens (Delaware) Attorneys for preferred stockholders' committee | 250.00 | .... |

Bondholders' Protective Committee

| | | |
|---|---|---|
| H. S. Payson Rowe, Chairman | $ 2,500.00 | 1,159.15 |
| Julian D. Anthony | 250.00 | 253.27 |
| William H. Duff | 2,500.00 | 3,133.07 |
| T. A. Phillips | 500.00 | 564.65 |
| F. T. Pratt | 800.00 | 127.75 |
| E. B. Sherwin | 1,000.00 | 427.90 |
| Duff & Phelps, Security Analysts | 2,500.00 | 530.57 |
| C. B. Higgins, Secretary | 1,000.00 | 756.49 |
| General Expenses of Bondholders' Committee | | 1,235.13 |

Preferred Stockholders' Committee

| | | |
|---|---|---|
| David S. Soliday, Chairman | .... | .... |
| John W. Sparling, Certified public accountant | 1,000.00 | .... |
| John H. Mason | 500.00 | .... |
| Thomas E. Young | .... | .... |
| R. C. Fleck, Secretary | 2,000.00 | 245.97 |
| E. B. Williamson | .... | .... |
| Seibert & Riggs, special counsel to insurance companies | 4,000.00 | .... |
| Post, Russell, Davis & Paine and W. F. McNaughton (Spokane, Washington) Attorneys for debtor | 500.00 | .... |
| Kellar & Kellar (South Dakota) Attorneys for debtor | 250.00 | 8.87 |
| Johnston, Coleman & Jameson (Montana) Attorneys for debtor | 250.00 | 8.60 |
| Blyth & Co. and Paul H. Nitze, sale of new bonds | 25,000.00 | .... |
| Milbank, Tweed & Hope, Attorneys for bank making loan | 1,000.00 | .... |
| Harris Trust and Savings Bank corporate trustee under bond indenture | 4,250.00 | 85.00 |
| Continental Illinois National Bank and Trust Company of Chicago successor trustee | 9,642.94 | 3,211.48 |
| Second National Bank of Boston, paying agent | 2,035.60 | 708.98 |
| Stein & Roe, security analysts | 250.00 | 82.75 |
| Benjamin N. Brown, examiner | 250.00 | .... |

An order may be submitted.