**In re CONSOLIDATED ROCK PRODUCTS CO.**

No. 25816–H.

District Court, S. D. California, Central Division.

Feb. 3, 1941.

O'Melveny &. Myers, by Graham L. Sterling, Jr., of Los Angeles, Cal., for Union Rock Co. Bondholders' Protective Committee.

Gibson, Dunn & Crutcher and T. H. Joyce, all of Los Angeles, Cal., for Consumers Rock & Gravel Co. Bondholders' Protective Committee.

Stanley Arndt, of Los Angeles, Cal., for Edward E. Hatch et al.

Latham & Watkins and Paul R. Watkins, all of Los Angeles, Cal., for debtor.

Mott & Grant and Kenneth E. Grant, all of Los Angeles, Cal., for E. Blois du Bois.

HOLLZER, District Judge.

The debtor's attorneys have petitioned the court for an order authorizing the debtor to make certain expense advances to said attorneys by reason of a trip to and from Washington, D. C., for the purpose of appearing before the United States Supreme Court on behalf of said debtor. The Securities and Exchange Commission, which is appearing in this proceeding with the Court's approval, has interposed objections to the allowance of such expense upon the ground that because of the purchase of stock of the debtor by its attorneys since the commencement of these proceedings no such allowance may be made to them.

On the same day upon which the foregoing application came on for hearing, said debtor's attorneys filed an additional petition praying the court for an order approving said purchase of stock.

The within entitled proceedings were commenced in 1935 pursuant to the then provisions of Section 77B of the Bankruptcy Act, 11 U.S.C.A. § 207. On July 2, 1935, an order was entered leaving the debtor in possession of its business and properties and authorizing the debtor to operate the same.

Following long drawn out negotiations extending over a period of more than a year, a plan of reorganization for the debtor was prepared on or about March 15, 1937. In the difficult and laborious task of evolving and preparing this plan, the debtor's attorneys, also two separate and opposing bondholders' protective committees representing different bond issues,

also their respective attorneys, as well as other parties, participated.

Thereafter and during the period within which said plan was being submitted to the bondholders and stockholders and others for approval, namely, on or about April 2, 1937, the debtor's attorneys, through and in the name of one Edward C. Maxwell, purchased 500 units of stock of the debtor each unit consisting of two shares of preferred stock and one share of common stock, and in addition 500 shares of preferred stock of the debtor, all for a total cost of $1,523.16. Subsequently the debtor's attorneys caused the said stock to be deposited and voted in favor of said plan of reorganization. At all times since this purchase, said Maxwell has held, and still holds, said stock as trustee for the members of said firm. However, about two years ago one of the then partners severed his connection with said firm. Aside from the above described transaction, neither said firm nor any member thereof has since the commencement of the within proceedings purchased or sold any claim against, or stock of, said debtor or its subsidiaries and no claim against, or stock of said debtor or its subsidiaries has been otherwise acquired or transferred by or on behalf of said firm or any member thereof.

On April 20, 1939, the court made its order adjudging that the application of the provisions of Chapter X of the Bankruptcy Act, 11 U.S.C.A. § 501 et seq., was practicable to a portion of the proceedings herein, to-wit, the proceedings represented by the petitions of the two bondholders' protective committees for allowances on account of certain costs and expenses disbursed by said committees.

On August 13, 1940, the court made a similar order with respect to another portion of the proceedings herein, to-wit, the proceedings represented by the petition of Union Rock Company Bondholder's Protective Committee for allowance on account of additional costs and expenses disbursed by the latter committee.

Within the past few days the court upon the same theory has ruled that reimbursements should be made for the expenses of attorneys representing the respective bondholders protective committees in connection with the aforementioned hearing before the United States Supreme Court and also for similar expenses of the attorney representing the objecting bondholder.

It thus appears that the court has determined that the application of the provisions of Chapter X of the Bankruptcy Act in proceedings similar in character to the petitions filed by the debtor's attorneys is practicable. Chapter X, Section 276 sub. c (2), 11 U.S.C.A. § 676, sub. c (2).

No claim is asserted that the debtor's attorneys have profited by the aforementioned purchase of stock. In fact, the testimony indicates that they have suffered a financial loss from said transaction. Nor can there be any basis for charging said attorneys with bad faith.

The precise question presented for determination here has not been passed upon in this Circuit, at least so far as the reported cases disclose. However, the decisions rendered by other courts in cases involving the same principle all point one way, namely, that under circumstances analogous to those found here the court is powerless to allow either compensation or expenses.

In Otis & Co. v. Insurance Bldg. Corp., 110 F.2d 333, it appeared that reorganization proceedings had been filed and approved more than three months before the effective date of Chapter X of the Chandler Act. It was there held by the First Circuit Court of Appeals that a representative of the bondholders of the debtor functioning as a bondholder's protective committee who had purchased bonds issued by the debtor prior to the effective date of said Act, and who had also bought and sold other bonds of the debtor subsequent to said date, was not entitled either to compensation for services rendered or to reimbursement for disbursements made, regardless of the good faith of such transactions and even though losses had been sustained thereby. In the course of its opinion the court there said (110 F.2d at page 335):

"If they [purchases and sales of the debtor's securities] are the usual, voluntary purchases and sales, occurring during the proceeding after acceptance of the trust, allowance of compensation is prohibited without qualification. The existence of good or bad faith, the fact that there is, on the face of the transaction, a profit or a loss, is immaterial. No approval by the judge can alter the situation.

914

It is doubtless true that the statute, thus construed, may work a hardship in some cases—as in this; but such sporadic cases are inconsiderable compared to the large object sought to be achieved by the law, which is to fix a standard of conduct by persons acting in fiduciary capacities in these cases, so high as to prevent any possible clash between selfish interest and faithful performance of duty.

"As a matter of fact, very much the same standard was established by the courts before the recent amendment to the bankruptcy law was passed. Michoud v. Girod, 4 How. 503, 557, 11 L.Ed. 1076; Magruder v. Drury, 235 U.S. 106, 119, 35 S.Ct. 77, 59 L.Ed. 151; In re Paramount-Publix Corp., D.C., 12 F.Supp. 823, 828."

To the same effect, see In re Mountain States Power Co, D.C., 35 F.Supp. 307; In re Arcade Malleable Iron Co., D.C., 35 F.Supp. 461.

The same principle was applied by the United States Supreme Court in its decision rendered November 25, 1940, in the case of American United Mutual Life Insurance Co. v. City of Avon Park, Florida, 61 S.Ct. 157, 162, 85 L.Ed. ——, although in the latter case the debtor was a municipality proceeding under Chapter IX of the Bankruptcy Act, 11 U.S.C.A. § 401 et seq. In the case just cited, the court declared: "The scope of the power of the court embraces denial of compensation to those who have purchased or sold securities during or in contemplation of the proceedings. As in case of reorganizations under former § 77B, 11 U.S.C.A. § 207, the provision in § 83, sub. b, 11 U.S.C. § 403, sub. b, 11 U.S.C.A. § 403, sub. b, for allowance of 'reasonable compensation' for 'services rendered' necessarily implies 'loyal and disinterested service in the interest of the persons' for whom the claimant purported to act. In re Paramount-Publix Corp., D.C., 12 F.Supp. 823, 828."

■ We have already noted that in the proceedings before us the debtor has been allowed to remain in possession of its properties and to operate its business pursuant to order of court. Accordingly, in the present case, the debtor has been in effect the trustee for all interested parties, including its stockholders. As pointed out by our Ninth Circuit Court of Appeals in its recent decision rendered December 13, 1940, in the case of Urban Properties Corp. v. Benson, Inc., 116 F.2d 321, 324: "The statutory continuance of a debtor in possession subject to the control of the court certainly creates the debtor a 'custodian' of the property under the court's control and hence an 'officer'. Cf. In re Shapera, 7 Cir., 86 F.2d 506, 507. Where the debtor becomes by the court's order the person authorized to operate the business, he becomes the 'person authorized by law to perform the duties of such officer', as the trustee. * * * Undoubtedly he is a 'court officer analogous to a receiver or trustee.' In re Wil-Low Cafeteria, 2 Cir., 111 F.2d 83, 84."

Let us assume, for the purpose of the present discussion, that the debtor's securities which its attorneys had purchased represented so large a quantity that the voting of the same would have been necessary in order to obtain the necessary percentage of approval for the plan of reorganization. In other words, depending upon how that particular amount of securities had been voted, the plan would have received or, correspondingly, would have lacked, the requisite percentage of approval. Will it be doubted that under such circumstances the purchase of those securities would have barred the debtor's attorneys from receiving compensation? Does the circumstance that the quantity of the securities purchased represents a comparatively small amount alter the rule which must be applied?

■ We are convinced from a reading of the cases hereinbefore cited that this question must be answered in the negative, and that the trustee (herein the debtor), and likewise its counsel, held a fiduciary relationship in the proceedings which would bar them from receiving compensation for services rendered as well as reimbursements for disbursements made in the reorganization proceedings, if they dealt in securities of the debtor while occupying such a fiduciary position.

While the application of the principle herein discussed undoubtedly works a hardship in the case at bar, the court has no alternative but to deny the aforementioned petitions of the debtor's attorneys.