## In re INTERNATIONAL RY. CO.

### No. 36453.

United States District Court
W. D. New York.

July 7, 1949.

See also D.C., 85 F.Supp. 331.

George Zolotar, Frederick Finnegan and Arthur Goldman, New York City, for Securities and Exchange Commission.

Homer Woods and Francis Maloney, Buffalo, N. Y., for Trustees.

Adrian Block, Buffalo, N. Y., for various Tort Claimants.

Penney, Penney, Buerger & Siemer, Buffalo, N. Y., for Bondholders Protective Committee.

Hellings, Ulsh, Morey & Stewart, Buffalo, N. Y., William I. Morey, Buffalo, N. Y., for Bondholders Protective Committee.

Regis O'Brien, Buffalo, N. Y., for Bondholders Protective Committee consisting of William J. Minsch, Jonathan Chace and James H. Sheppard.

Morey, Schlenker & Murrary, Buffalo, N. Y., David Murray, Buffalo, N. Y., for Harry P. Schaub, representing certain individual bondholders.

Kenefick, Cooke, Mitchell, Bass & Letchworth, Buffalo, N. Y., John L. Hollands, Buffalo, N. Y., for Bankers Trust Co.

Thomas J. O'Donnell, Buffalo, N. Y., for S. C. Parker.

Fred C. Maloney, Corporation Counsel of City of Buffalo, Elmer S. Stengel, Assistant, for City of Buffalo.

KNIGHT, Chief Judge.

The Securities and Exchange Commission petitions to disqualify William J. Minsch, Jonathan Chace and James H. Sheppard, from acting as a committee (called Minsch Committee) for bondholders in the reorganization proceedings for the International Railway Company. In reorganization proceedings under Chapter X of the Bankruptcy Act, 11 U.S.C.A. § 501 et seq., it is customary and most advisable that bondholders, such as in this, be directly represented by those of their choosing to act in their behalf. Proceedings under Chapter X are instituted by representatives of the corporation, but those having interests in it have the right to know individually through their own choosing of representatives what actions are being taken. They must be "free of conflict-

ing interest." Steere v. Baldwin Locomotive Works, 3 Cir., 98 F.2d 889, 892. They must give loyal and disinterested service. In re Republic Gas Corp., D.C., 35 F.Supp. 300.

The "Minsch Committee" is a committee purportedly organized by certain of the holders of the debtor's refunding and improvement mortgage 5% gold bonds. It was the first bondholders committee organized, and its selection was made in anticipation of the main proceedings herein.

The total bond representation of "Minsch Committee" at the inception was $4,011,300. Of this amount, G. Louise Robinson (G. Louise Robinson de Dombrowski) owned $2,210,800, or 55% of the aggregate principal amount of bonds represented by the committee as of September 3, 1947; 14,000 shares of the preferred stock or 57% of the amount outstanding and 38% of all common stock. Subsequent to the initiation of proceedings under Chapter X of the Bankruptcy Act, another committee known as the "Snyder Committee" was formed on behalf of certain other holders of the aforesaid bonds. The aggregate of these bonds represented by the "Snyder Committee" is at least a $1,000,000.

Proofs of claims were filed by the Robinson group in the reorganization proceedings. The "Snyder Committee" filed objections to them, alleging no liability by reason of mismanagement of the International Railway Company by the Robinsons, uncle and niece, and their associates. When this contest arose, the proxies of the Robinson and associates bondholders held by the "Minsch Committee" were withdrawn from the "Minsch Committee" and new counsel selected to act for it with respect to its remaining bond representation. The reason for such withdrawal is patent. As one of the "Minsch Committee" well put it: "and in this proceeding to subordinate the Robinson bonds, our committee was compelled by force of circumstances to join, and we found ourselves, therefore, on the opposite side of Mr. Rickaby, (one of counsel for the committee, as well as for the Robinson interests)." The subordination proceedings and disqualification proceedings are closely linked. In any committee representation, whether as here or anywhere else, faithfulness and loyalty to its sponsors is demanded.

The law firm of which Mr. Rickaby was a member for a considerable time prior to the commencement of the Chapter X proceedings, had represented the Robinson interests in connection with the management of the International Railway Company. This counsel and the secretary withdrew from the "Minsch Committee", but counsel has continued to act for the Robinson group. There can be no question that the final selection of the membership of the "Minsch Committee" was made by Robinson counsel. Numerous communications in the record confirm this. The Bankers Trust Company, indenture trustee for I. R. C. bonds, initially had something to do with it, but whether it did or not, makes no difference, counsel had the final say. For some reason as Mr. Rickaby asserts, the Indenture Trustee did not want to be mentioned in connection "with the story of the organization of the Committee." A fair conclusion from all the circumstances is that the Committee was primarily formed to represent the Robinson interests and not the public bondholders. There is much in the record going to show favor for those interests by certain of the members of the committee. I refer particularly to certain of the communications in evidence, written by Mr. Sheppard. It is true that since the severance of the Robinson interests from the "Minsch Committee" the committee has joined in the objections to the claim of G. Louise Robinson. Present counsel to the committee has taken part in pressing the "Snyder Committee's" claims.

To determine the matter presented here we have to go back to the time of the selection of the members of the "Minsch Committee" and their attitude prior to the withdrawal of the Robinson interests. If they did not meet the requisite tests of disinterest then, they then became and continued to be disqualified. By a mere withdrawal of the Robinson group, ties already made may not be changed. Lack of loyalty is not as much an openly

expressed attitude of mind but a subconscious attitude which may generate later. In other words it may remain all the time.

In Woods v. City Nat. Bank & Trust Co., 312 U. S. 262, at page 268, 61 S.Ct. 493, at page 497, 85 L.Ed. 820, the Court said: "Where a claimant, who represented members of the investing public, was serving more than one master or was subject to conflicting interests, he should be denied compensation. It is no answer to say that fraud or unfairness were not shown to have resulted. * * * The principle enunciated by Chief Justice Taft in a case involving a contract to split fees in violation of the bankruptcy rules, is apposite here: 'What is struck at in the refusal to enforce contracts of this kind is not only actual evil results but their tendency to evil in other cases.' * * * Furthermore, the incidence of a particular conflict of interest can seldom be measured with any degree of certainty."

As was said in the 1937 Report of the S.E.C. on the Study and Investigation of the Work of Reorganization Committees: "* * * the members of the committee may merely have been selected by the management. But the fact of selection itself is both a symptom and cause of loyalty. It indicates that there may be a close relationship between the chosen committee members and the management which will stifle investigation of and opposition to the management by the committee. * * * True it is that there are individuals who would not be subject to such subtle influences. And there are others who would resist and resent any inference of partiality based on the fact of selection by the management. But the influence is as pervasive as it is subtle; and it may be an effective deterrent to a program of action inimical to the selfinterest of the management."

In Re Realty Associates Securities Corp., D.C., 56 F.Supp. 1008, at page 1009, it is said: "Stockholders may organize committees to represent them, * * * upon such organization the loyalties of such committees are clearly, defined and expressed. However, where as here, a group organizes presumably for the purpose of representing creditors exclusively, after having represented the debtor's interests at least partially during the past ten years, it is clear that such past relationship will give rise to conflicting loyalties, which these directors, concededly persons of ability and integrity, will be unable to reconcile."

 The motion herein, also, is based on the further claim that two of the Committee are disqualified, one because while on the committee he effected transactions in the debtor's bonds, and another because he had rendered investment advice in respect to such bonds. Mr. Chace's firm traded for its own account or interest in the debtor's bonds while he was a committeeman. This fact bears on the question on disinterestedness as well as right for compensation as such trustee. He clearly would be disqualified. As to Mr. Sheppard, there is less showing of a conflicting interest as a basis for disqualification. He owned some I. R. C. bonds. He was a bond adviser and suggested or concurred in the sale of 33 bonds to 5 clients in 1948.

In Re Republic Gas Corp., D.C., 35 F. Supp. 300, 306, it was said: "It may well be that there are some who, without veering away from the utmost faithfulness, could safely be left free to trade in bonds which are the subject matter of their trusts. Nevertheless, the danger of the contrary is so manifest, the bondholders themselves generally are so helpless and the hurt to them is or may be so serious that, in order to protect against the evil, or the possibility of the evil, from which bondholders have suffered so grievously in the past, and which Congress intended to bring to an end, the court should inflexibly enforce the rule that members of committees shall not trade in the securities with respect to which they are acting or undertaking to act in behalf of the owners."

Repetitions of comparable expressions of law are found in Re Midland United Co., D.C., 64 F.Supp. 399, affirmed, 3 Cir., 159 F.2d 340; In re Mountain States Power Co., D.C., 35 F.Supp. 307; In re Standard Commercial Tobacco Co., D.C., 34 F. Supp. 304; In re Los Angeles Lumber Products Co. Ltd., D.C., 37 F.Supp. 708; In

re Mountain States Power Co., D.C., 35 F. Supp. 307, affirmed as to this point, 3 Cir., 118 F.2d 405; and numerous other opinions.

The court does not impugn the integrity of the members of the "Minsch Committee" or its counsel. It does conclude that the committeemen were selected by the representative of the management group of the railway and under the facts shown they do not occupy a disinterested position. The matter of the payment of expenses and charges of the committee and counsel will be considered later. Petition granted.