In re JOHNS–MANVILLE CORPORATION, et al. Debtors.

JOHNS–MANVILLE SALES CORPORATION, et al. Movants,

v.

Catherine DOAN, Robert E. Sweeney and Robert E. Sweeney Co., L.P.A., Respondents.

Bankruptcy Nos. 82 B 11656, 82 B 11676.

United States Bankruptcy Court, S.D. New York.

Jan. 27, 1983.

Cornelius Blackshear, Acting U.S. Trustee, S.D.N.Y., New York City.

Robert E. Sweeney, Robert E. Sweeney Co., L.P.A., Cleveland, Ohio, pro se and for respondent, Catherine Doan, Robert E. Sweeney and Robert E. Sweeney Co., L.P.A.

Davis, Polk & Wardwell, New York City, for Johns-Manville Sales Corp., et al.; Miriam G. Cedarbaum, New York City, of counsel.

Levin & Weintraub & Crames, New York City, for Johns-Manville Sales Corp., et al.; Barry Seidel, New York City, of counsel.

Moses & Singer, New York City, for the Committee of Asbestos-Related Litigants and/or Creditors; Robert J. Rosenberg, New York City, of counsel.

BURTON R. LIFLAND, Bankruptcy Judge.

A bench ruling finding the respondents in contempt was orally delivered by this Court on January 24, 1983 and "So Ordered" on the record so that the parties, if inclined, could seek prompt appellate review. The following constitutes this Court's written memorialization of that ruling:

Manville seeks an order decreeing that by virtue of respondents' continuation of a judicial proceeding against Manville that was commenced before Manville's filing in Chapter 11, Catherine Doan and her attor-

ney, Mr. Robert E. Sweeney and the law firm of Robert E. Sweeney Co., L.P.A., are in continuing violation of the Section 362 automatic stay and of this Court's restraining order entered August 26, 1982 and in civil contempt of this Court. In addition, Manville urges this Court to permanently restrain and enjoin these parties from taking any action in support of their motion filed January 14, 1983 to advance the cause of action against Manville in the case of *Doan v. Johns-Manville Sales Corp., et al,* Case No. 80–008534 currently pending in the Court of Common Pleas in Cuyahoga County, Ohio. Manville further requests that respondents be directed to withdraw said motion. Judge McMonagle of the Ohio court had previously severed Manville as defendant in the *Doan* case.

██ It is the opinion of this Court that the acts of these parties in seeking to advance Ms. Doan's cause of action in the Ohio litigation are in direct contravention of Section 362 of the Code as well as the substantially identical restraining order of August 26, 1982. I find that these respondents, although fully aware of Manville's Chapter 11 filing, the automatic stay, and the Court's stay order of August 26, 1982, nonetheless have proceeded with the Ohio suit. *See* Respondents' Motion to Advance Cause Against Johns-Manville Sales Corp. at p. 2 annexed to Manville's Application as Exhibit B. Before the Ohio plaintiff and her counsel may properly proceed with the Ohio litigation, Section 362(d) requires that they must first apply to this court for an order to lift, vacate or modify the automatic stay for good cause shown. *See* 11 U.S.C. § 362(d). Having failed to do so, they must now find themselves in continuing violation of the stay and thus in contempt of this Court. *See Fidelity Mortgage Investors v. Camelia Builders, Inc.,* 550 F.2d 47 (2d Cir. 1976), *cert. denied,* 429 U.S. 1093, 97 S.Ct. 1107, 51 L.Ed.2d 540, *reh. denied,* 430 U.S. 976, 97 S.Ct. 1670, 52 L.Ed.2d 372 (1977).

In *Fidelity Mortgage Investors v. Camelia,* the Second Circuit held that a contempt order can be premised on the institution of a foreclosure action in violation of the automatic stay. The Second Circuit declared, 550 F.2d at 57:

Camelia and Farnale were aware of FMI's Chapter XI petition in New York almost immediately after it was filed. At that point, Rule 11–44 (the predecessor to Section 362) required Camelia and Farnale to secure the permission of the New York bankruptcy court before filing a separate action in Mississippi. As noted above, the need to centralize bankruptcy-related proceedings and to prevent a chaotic scramble for the debtor's assets is an interest of paramount importance in the bankruptcy laws.

The Second Circuit thus concluded:

Camelia and Farnale did not secure such permission and, therefore, must be prepared to confront the consequences.

Accordingly, the Circuit affirmed the bankruptcy judge's finding of contempt, which he had certified to District Judge Owen and affirmed the sanctions imposed by Judge Owen of costs, including reasonable attorneys' fees for both defending the state court action and prosecuting the contempt proceeding.

The instant case falls squarely within the holding in *Fidelity Mortgage Investors v. Camelia, supra,* notwithstanding any assertion that may be made here by defendants that the bankruptcy court did not have the jurisdiction to promulgate its order of August 26, 1982 or that it does not now have the authority to enforce the provisions of Section 362 of the Code because of the Supreme Court's decision in *Northern Pipeline Construction Co. v. Marathon Pipeline Co.,* —— U.S. ——, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). Defendants have asserted in their motion papers before the court in Ohio that the Emergency District Court Rule empowering bankruptcy judges to decide automatic stay issues, Rule (d)(3)(A) in the Southern District of New York, is unconstitutional in that *Marathon* invalidated the jurisdiction of the district court, as well as the bankruptcy court, to decide bankruptcy issues. *See* Defendants' Motion to Advance Ohio Cause at 7.

■ Without passing on the merits of defendants' possible jurisdictional defense to these contempt proceedings, it is abundantly clear that all persons bound by an injunctive order have a duty to comply until such time as the order is modified or reversed by a court having authority to do so. *See, e.g., Walker v. City of Birmingham,* 388 U.S. 307, 87 S.Ct. 1824, 18 L.Ed.2d 1210, *reh. denied,* 389 U.S. 894, 88 S.Ct. 12, 19 L.Ed.2d 202 (1967); *United States v. United Mine Workers,* 330 U.S. 258, 289–95, 67 S.Ct. 677, 693–96, 91 L.Ed. 884 (1947).

In *United Mine Workers,* the Supreme Court affirmed a District Court's finding of criminal and civil contempt and a fine based upon the union's violation of a restraining order issued in a suit by the government which was aimed at preventing a union and its officers from precipitating a nationwide strike in the coal mines pending judicial interpretation of a labor contract between the government and the union at a time when the mines were being operated by the government. The union contended that provisions of the Norris LaGuardia Act and the Clayton Act deprived the district court of jurisdiction to issue this restraining order. The Supreme Court held that even if the district court had not had jurisdiction to issue the injunction, this jurisdictional defect would constitute no excuse for the violation of this injunction issued properly by the district court to preserve existing conditions pending a decision on its jurisdiction.

The Court in *United Mine Workers* declared:

> It is for the court of first instance to determine the question of the validity of the law, and until its decision is reversed for error by orderly review, either by itself or by a higher court, its orders based on its decision are to be respected, and disobedience of them is contempt of its lawful authority, to be punished.

*United Mine Workers,* 330 U.S. at 294, 67 S.Ct. at 696 (quoting *Howat v. Kansas,* 258 U.S. 181, 189–90, 42 S.Ct. 277, 280–81, 66 L.Ed. 550 (1922)).

The policy rationale for this holding was reiterated by the court in *United Mine Workers* as follows:

> If a party can make himself a judge of the validity of orders which have been issued, and by his own act of disobedience set them aside, then are the courts impotent, and what the constitution now fittingly calls the "judicial power of the United States" would be a mere mockery.

*Id.* at 290, 67 S.Ct. at 694 (quoting *Gompers v. Bucks Store & Range Co.,* 221 U.S. 418, 450, 31 S.Ct. 492, 501, 55 L.Ed. 797 (1911)).

■ Accordingly, the proper mode of raising the issue of an alleged defect in an injunctive order is not as a defense to a contempt proceeding, but as an application to the court which issued the injunction for a construction of its terms or to modify or dissolve it. *See Walker v. Birmingham,* 388 U.S. 307, 318, 87 S.Ct. 1824, 1830, 18 L.Ed.2d 1210, where the court affirmed a contempt order even though the injunction and parade ordinance were subject to substantial constitutional question; *United Mine Workers, supra; New Jersey v. New York City,* 296 U.S. 259, 56 S.Ct. 188, 80 L.Ed. 214 (1935); *Fidelity Mortgage Investors v. Camelia, supra. See also* 11 U.S.C. § 362(d).

As the court found in *Walker,* this is "not a case where a procedural requirement has been sprung upon an unwary litigant when prior practice did not give him fair notice of its existence". *Walker,* 388 U.S. at 319, 87 S.Ct. at 1831. On the contrary, respondents clearly recognized the intended prohibitory effect of the automatic stay in their brief to the Ohio court and nonetheless are proceeding in willful and flagrant disregard of these stay orders.

■ It is certainly not arguable in any sense that the Supreme Court's decision in *Marathon* has already invalidated this Court's power to enforce the provisions of the Section 362 automatic stay and of its August 26, 1982 order. This is because the drafters of Emergency District Court Rule (d)(3)(A) clearly carved out enforcement of the automatic stay as an area to be lodged with the bankruptcy court until Congress

acts to cure the constitutional infirmity delineated in the *Marathon* opinion. Unless and until this district court rule is declared unconstitutional, it is well-established, as detailed above, that it must be obeyed. If it is not obeyed, those who violate it are liable in contempt. Along these lines, it should be noted that many of the courts facing the issue of the constitutionality of the emergency district court rule have found at least provisionally that it is constitutional. *See Prudential Insurance Company of America v. the Stouffer Corp.*, 26 B.R. 860 (E.D.Mich.1983); *American Airlines v. Braniff Airlines*, decided from the bench January 14, 1982, U.S. District Court, Texas; *Johnson et ux v. Johns-Manville Sales Corp., et al.*, No. 3–82–199, (Dist. Ct.S.D.Tenn., per Winner, U.S.D.J., January 1983). Moreover, at least one commentator has suggested that the *Marathon* decision "cannot fairly be read to say that the Court intended as well to deprive the *district* courts of jurisdiction". *See* Stewart, Geoffrey S. and Kaminer, Stevenson S., *Northern Pipeline and the Reference Rule*, N.Y.L.J., January 24, 1983 at p. 1 (emphasis in original).

▪ A bankruptcy court is empowered to punish for civil contempt pursuant to 28 U.S.C. Section 1481. This Section, with certain limitations not pertinent to the relief requested, provides: "A bankruptcy court shall have the powers of a court of equity, law and admiralty."

▪ Rule 920 of the Bankruptcy Rules [1] provides the procedures by which a bankruptcy judge may adjudicate the proper sanctions for civil contempts. Actual loss is the measure of compensatory fines for civil contempt. *See, e.g. United Mine Workers, supra* 330 U.S. at 303–04, 67 S.Ct. at 701; *In re Reed*, 11 B.R. 258, 276 (Bkrtcy. D.Utah 1981). In punishing for civil contempt, a court is empowered to impose a sanction sufficient to coerce the respondents into complying. In this regard, a court is to be granted discretion to fashion a remedy taking into account the character and magnitude of the harm threatened by the continued contumacy and the probable effectiveness of any suggested sanction in bringing about the result desired. *United Mine Workers*, 330 U.S. at 304, 67 S.Ct. at 701. *Accord, McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 193–95, 69 S.Ct. 497, 500–01, 93 L.Ed. 599 (1949).

This Court finds that despite the language in Rule 920 which would seem to require a bankruptcy court to certify its finding of a fine in excess of $250 to the district court, it is enabled by virtue of the broad grant of Section 1481 of the Code, which was enacted in 1978, subsequent to Rule 920, to exact a fine of more than $250 against these contemnors. Other cases so holding since the promulgation of the Code include *In re Reed, supra* and *In re Gibson*, 16 B.R. 682 (Bkrtcy.S.D.Ohio 1981). *See also* 1 Collier on Bankruptcy ¶ 3.01 at 3–109 (15th ed.1982) (stating that Section 1481 places no limit upon the exaction of fines for civil contempt). *But see In re Cox Cotton Co.*, 24 B.R. 930 (Bkrtcy.E.D.Ark. 1982), where the court, expanding the holding of the *Northern Pipeline* case, declared that Section 1481 is unconstitutional in its delegation of contempt powers to a non-Article III court. *A fortiori*, a bankruptcy court must certify contempt findings to a district court. However, the November 17, 1982 decision by the court in *Cox Cotton* did not review the bankruptcy court's action in light of the requirements of the Emergency Rules promulgated by the Judicial Conference of the United States and adopted in this district on December 21, 1982. Pursuant to Section (d)(3) of these Rules, it is only with regard to "related proceedings" that a bankruptcy judge may not enter a dispositive order but instead must certify findings to the district court. This contempt proceeding is clearly not a related

---

1. The citation to Bankruptcy Rule 920 refers to one of the rules contained in the Rules of Bankruptcy Procedure, promulgated by the Supreme Court pursuant to 28 U.S.C. § 2075 for use under the former Bankruptcy Act of 1898, as amended, and applicable under the Bankruptcy Code to the extent not inconsistent. *See* B.R.A. Sections 247, 402 and 405.

924

proceeding in that it is both a "contested matter concerning the administration of the estate" and a "proceeding in respect to lifting of the automatic stay." Emergency Rule (d)(3)(A).

In addition, I am of the view that there is nothing unconstitutional in the grant of a contempt power to the bankruptcy court. There is inherent in the power of every court the power to stay proceedings in order to control the disposition of cases on its docket. *See Landis v. North American Co.,* 299 U.S. 248, 254, 57 S.Ct. 163, 165, 81 L.Ed. 153 (1936) (Cardozo, J.). This principle should follow regardless of whether the court is a state or federal court, and regardless of whether, if a federal court, it is a special court or one of limited jurisdiction. Accordingly, pursuant to *Landis,* any conduct which disrupts or threatens the inherent power of a court to control proceedings or to maintain the dignity and efficiency of the judicial process should in the first instance be punished by that court. This premise is even more appropriately applied in the instant case where the conduct complained of is a knowing violation of an Act of Congress as well as this Court's order.

Furthermore, the facts in the instant case are not sufficiently similar to those in *Cox Cotton* to warrant the adoption of its holding here. In the instant case, all parties stipulated to the facts constituting the civil contempt at a full and fair hearing held before this Court on January 24, 1983. Thus, there can be no claim that the contemnor herein has been deprived in any way of any due process rights by means of, for example, a summary citation for contempt. Accordingly, the danger sought to be avoided by Judge Eisele in *Cox Cotton* of abrogation of due process rights by summary adjudication, *see, e.g.,* 24 B.R. at 949, 955–56, has no application in the instant case.

It should also be noted parenthetically that not only does Judge Eisele consider the power of the bankruptcy court to issue contempt findings unconstitutional, but he also finds open to question the power of the Tax Court and territorial courts constitutionally

to issue contempt findings. *See id.* at 952–954.

Moreover, any contention that Section 1481 does not apply during the transition period, that is, until 1984 when the Code is fully implemented, is without merit. *See In re Reed, supra;* 1 Collier On Bankruptcy ¶ 7.04 at 7–46 and note 20 (15th Ed.1982).

A fine or sanction as to some of the respondents in excess of $250 is particularly appropriate to remedy the willful, deliberate, continued contumacy presented in the instant case. A fine below that amount or an undue delay of these proceedings to certify these findings to the district court is particularly inappropriate here in bringing about the result desired. Not only is respondent Mr. Sweeney an officer of the court who I find, as a result of this contempt hearing, to have violated a statute and order of this Court, but as a court-ordered appointee under 11 U.S.C. Section 1102, he also currently maintains a membership on the Committee of Asbestos-Related Litigants and/or Creditors ("the Asbestos Committee"). Clearly, Mr. Sweeney's position on the Asbestos Committee puts him on notice of the Manville bankruptcy and the consequent automatic stay. Thus, Mr. Sweeney's bringing this motion to advance the Ohio litigation is a deliberate, direct flouting of the orders of this court. Also, Mr. Sweeney's service on the Asbestos Committee demonstrates clearly inconsistent positions on his part. On the one hand as attorney for Doan, in state court proceedings, he is contesting the jurisdiction of the bankruptcy court, and as an 11 U.S.C. Section 1102 committee member, he is sanctioning the bankruptcy court's jurisdiction by working within its framework to foster his constituents' interests in the context of a reorganization plan.

Moreover, it is well-established that a holder of a claim or an equity interest who serves on a committee undertakes to act in a fiduciary capacity on behalf of the members of the class he represents. *See Woods v. City National Bank and Trust Company,* 312 U.S. 262, 61 S.Ct. 493, 85 L.Ed. 820 (1941); *In re Realty Associates*

*Securities Corp.,* 56 F.Supp. 1008, 1009 (E.D. N.Y.1944); 6 Pt 2 *Collier on Bankruptcy* ¶ 9.28 at 1731–33 (14th ed.1977); American Bankruptcy Law Journal, Vol. 55, Winter 1981, *The Creditors Committee Under the Bankruptcy Code—A Primer,* at pp. 56–58, H. Miller & M. Cook, *A Practical Guide to the Bankruptcy Reform Act,* at 527 and n. 78. (declaring that the members of an equity security holders committee are presumed to have undertaken fiduciary responsibilities identical to those assumed by creditors' committee members). The Supreme Court has cautioned that the "whole body of law" imposes "the most rigorous responsibilities for fair dealing" on fiduciaries who represent the rights of others. *Young v. Higbee Co.,* 324 U.S. 204, 213, 65 S.Ct. 594, 599, 89 L.Ed. 890 (1945).

In the case of reorganization committees, these fiduciary duties are crucial because of the importance of committees. Reorganization committees are the primary negotiating bodies for the plan of reorganization. They represent those classes of creditors from which they are selected. They also provide supervision of the debtor and execute an oversight function in protecting their constituent's interests. *See* House Report No. 95–595, 95th Cong., 1st Sess. 401 (1977), U.S.Code Cong. & Admin. News 1978, p. 5787. Empowered by Section 1103(c), committees may (1) consult with the debtor concerning the administration of the case; (2) investigate the acts, conduct, assets, liabilities, financial condition and operation of the debtor's business; (3) participate in the formulation of a plan, advise and make recommendations regarding the plan to those represented, and collect and file acceptances for the plan; (4) request the appointment of a trustee or examiner; and (5) perform any other services that are in the interests of those represented. *See* 5 Collier on Bankruptcy ¶ 1103.07 at 1103–15 to 1103–26. This is a wide and important array of authority indicating the intent to create a significant and central role for committees in carrying out a reorganization.

Accordingly, the individuals constituting a committee should be honest, loyal, trustworthy and without conflicting interests, and with undivided loyalty and allegiance to their constituents. *See In re Realty , Associates Securities Corp.,* 61 F.Supp. 574 (E.D.N.Y.1945). Conflicts of interest on the part of representative persons or committees are thus not be tolerated. *See Woods, supra; American United Mutual Life Insurance Co. v. City of Avon Park,* 311 U.S. 138, 61 S.Ct. 157, 85 L.Ed. 91 (1940). Thus, where a committee representative or agent seeks to represent or advance the interest of an individual member of a competing class of creditors or various interests or groups whose purposes and desires are dissimilar, this fiduciary is in breach of his duty of loyal and disinterested service. *See id; In re Penn-Dixie,* 9 B.R. 941 (Bkrtcy.S.D.N.Y.1981). *See also In re Realty Associates Securities Corp.,* 56 F.Supp. 1008 (E.D.N.Y.1944).

In *Woods, supra,* the Supreme Court denied compensation where there were conflicts of interest in that, *inter alia,* two of the five members of a bondholders committee were officers or employees of one of the principal underwriters of the bonds and served as the indenture trustee. In so doing, the court stated:

> It is no answer to say that fraud or unfairness were not shown to have resulted ... the incidence of a particular conflict of interest can seldom be measured with any degree of certainty. The bankruptcy court need not speculate as to whether the result of the conflict was to delay action where speed was essential, to close the record of past transactions where publicity and investigation were needed, to compromise claims by inattention where vigilant assertion was necessary, or otherwise to dilute the undivided loyalty owed to those whom the claimant purported to represent. *Where an actual conflict of interest exists no more need be shown in this type of case to support a denial of compensation.*

*Woods,* 312 U.S. 262, 268, 61 S.Ct. 493, 497, 85 L.Ed. 820 (emphasis added). *See also In re International Railway Co.,* 86 F.Supp. 546, 547, 548 (W.D.N.Y.1949), where the court stated: "Lack of loyalty is not so

much an openly expressed attitude of mind but a subconscious attitude which may generate later."

■ In the instant case, it is clearly demonstrated that Mr. Sweeney's functions on the Asbestos Committee and larger fiduciary duties to the estate are in actual conflict with his actions as Ms. Doan's attorney. First, as noted above, his position regarding the propriety of this court's jurisdiction is in conflict in these two positions. Second, in advancing Mrs. Doan's interests, Mr. Sweeney is taking actions which are designed to benefit his client Doan and/or his own private interests in particular as opposed to benefitting all members of the asbestos claimants class which he represents as a committee member and fiduciary. The interests of one asbestos litigant in one action can diverge substantially from the interests of all asbestos claimants. One of these interests is bound to suffer due to Mr. Sweeney's divided loyalties herein. It is clear that his key role in plan formulation as a committee member could be jeopardized by his prohibited actions on behalf of Ms. Doan. *See* American Bankr. L.J., *supra* at 57. Third, as a member of the Asbestos Committee, Mr. Sweeney has access to all sorts of confidential information regarding, *inter alia,* the details of proposed reorganization plans and the debtor-in-possession's operations, which information is not intended to be used in fostering the rights of private litigants outside the context of protecting these creditors as a group in these bankruptcy proceedings. This confidential position should not be so misused by Mr. Sweeney. Indeed, it may be viewed that in this regard, Mr. Sweeney is using his fiduciary capacity to foster his own self interest as a private attorney, a breach of loyalty which is to be condemned. *See Magruder v. Drury,* 235 U.S. 106, 119, 35 S.Ct. 77, 81, 59 L.Ed. 151 (1914), where the court stated that a fiduciary (the trustee) cannot deal for himself because "[t]he intention is to provide against possible selfish interest exercising an influence which can interfere with the faithful discharge of the duty which is owing in a fiduciary capacity."[2]

Hence, because it appears that while Ms. Doan's act constitutes a deliberate, willful contempt of this Court, I believe her role is passive and while she is held in contempt, a fine will not be imposed at this time. With regard to Mr. Sweeney and his law firm, it is this Court's finding that the contempt they have perpetrated is far worse because of Mr. Sweeney's role as both an officer of the Court and a fiduciary to the estate and all asbestos creditors as a member of the Asbestos Committee. They shall be fined a sum not to exceed $5,000, the exact amount of the sanction to be determined at a hearing to be scheduled by the Court to ascertain the reasonable compensatory costs incurred by their conduct.

Furthermore, this court orders that these respondents are hereby permanently restrained pending the culmination of these bankruptcy proceedings from taking any action in support of their motion to advance the cause of their Ohio litigation. These respondents are directed to withdraw said motion forthwith.

IT IS SO ORDERED.

---

**2.** It is obvious that no such conflict of interest exists where a committee member represents individual clients within the confines of the applicable statutes and court orders.