In re JOHNS–MANVILLE CORPORATION, et al., Debtors.

MANVILLE CORPORATION, Plaintiff,

v.

The EQUITY SECURITY HOLDERS COMMITTEE, A.F. Investments as a Member of the Equity Security Holders Committee, Bankers National Life Insurance Company as a Member of the Equity Security Holders Committee, Centerre Trust Company of St. Louis as a Member of the Equity Security Holders Committee, Clayton & Dubilier Inc. as a Member of the Equity Security Holders Committee, Leon B. Dubin as a Member of the Equity Security Holders Committee, the Independent Insurance Group, Inc. as a Member of the Equity Security Holders Committee, Bertrand A. McKittrick as a Member of the Equity Security Holders Committee, Shlomo Nutovic as a Member of the Equity Security Holders Committee, Raytheon Financial Corporation as a Member of the Equity Security Holders Committee, and Leonard Starobin (Starr) as a Member of the Equity Security Holders Committee, Defendants.

Bankruptcy Nos. 82 B 11656–82 B 11676.
Adv. No. 85–6557A.

United States Bankruptcy Court, S.D. New York.

Sept. 20, 1985.

**880**

Levin & Weintraub & Crames, Davis, Polk & Wardwell, New York City, for debtors; Michael J. Crames and Andrew Kress, Lowell Gordon Harriss, New York City, of counsel.

Milbank, Tweed, Hadley & McCloy, New York City, for Creditors Committee; John Gellene, New York City, of counsel.

Fried, Frank, Harris, Shriver & Jacobson, New York City, for Leon Silverman, Legal Representative; Matthew Gluck, New York City, of counsel.

Virginia M. Handal, New York City, for U.S. Securities and Exchange Committee.

Latham & Watkins, New York City, for Asbestos plaintiffs; Stephen J. Sturgill, New York City, of counsel.

Hahn & Hessen, New York City, for Equity Sec. Holders Committee; George Hahn, Angela G. Tese, and Steven J. Mandelsberg, New York City, of counsel.

Weil, Gotshal & Manges, New York City, for Owens-Illinois; Ellen Werther, New York City, of counsel.

Whitman & Ransom, New York City, for U.S. Trust Co. of N.Y.; William M. Kahn, New York City, of counsel.

BURTON R. LIFLAND, Bankruptcy Judge.

On September 11, 1985, this Court delivered a bench ruling *inter alia* denying a motion of the Equity Security Holders Committee ("Equity Committee") for authority to retain the Delaware law firm of Allmond, Eastburn and Benge ("the Allmond firm") as special counsel and further denying the application seeking advance reimbursement for expenses incurred by the Committee in holding a shareholders' meeting. The Equity Committee's motion for summary judgment to dismiss a reactive complaint filed by Johns-Manville Corporation ("Manville") was heard at the same time and was also denied. The complaint sought to enjoin a Manville shareholders' meeting. Decision, however, was reserved on the grant of summary judgment in favor of Manville for the injunctive relief sought in its complaint. This opinion incorporates the oral bench ruling and determines the reserved portion of the summary judgment motion.

The present dispute between the parties involving corporate governance of a reorganization debtor commenced on August 16, 1985 when the Equity Committee filed a motion on thirty days notice for the *nunc pro tunc* retention of and compensation for the Allmond firm as special counsel. The Equity Committee sought the assistance of special counsel to institute an action in the Delaware Chancery Court to compel Manville to hold a shareholders' meeting. The Equity Committee also sought an order permitting reimbursement of all expenses incurred by holding such a meeting including those usually associated with a proxy fight. This motion was opposed by Leon Silverman, the legal representative appointed by this Court to represent future asbestos-health claimants,[1] the Co-Defendants Committee, Manville and the Asbestos Health Related Litigants Committee.

On August 19, 1985, Leon B. Dubin ("Dubin"), holder of 1,600 shares of Manville common stock and a member of the Equity Committee, commenced an action in a Delaware state court, individually and on behalf of the Equity Committee, to compel Manville to hold an annual shareholders' meeting. No leave of this Court, which has exclusive jurisdiction over this debtor's reorganization, was sought or obtained. Nei-

---

**1.** *See In re Johns-Manville Corp.*, 36 B.R. 743 (Bankr.S.D.N.Y.) (motion for appointment of a legal representative granted), *leave to appeal denied*, 39 B.R. 234 (S.D.N.Y.1984).

ther was there any attempt to accelerate a hearing on the related counsel retention motion.

On August 27, 1985, Manville responded by filing a complaint against the Equity Committee and its members, seeking to enjoin the Delaware action, or alternatively, to prevent any elected official from taking office until this Court's approval is obtained. On September 5, 1985, the Equity Committee responded by filing a motion for summary judgment dismissing Manville's complaint.

ISSUES

The following issues were articulated in the bench ruling of September 11, 1985 and are cumulatively dealt with in this opinion:

1) whether § 1103(c) of the Bankruptcy Reform Act of 1978 ("Code") authorizes the Equity Committee to seek the *nunc pro tunc* retention of the Allmond firm for the agenda set forth in the moving papers;

2) whether the Equity Committee has any authority under the provisions of the Code to have one of its members, in an individual and representative capacity, institute the action in the Delaware courts without first obtaining leave of this Court;

3) whether the Equity Committee collectively and Dubin, one of its members, may be enjoined from proceeding with the Delaware action;

4) whether the Equity Committee is entitled to summary judgment in its favor on the issue of its right to compel a shareholders' meeting; and

5) whether there exist genuine issues of fact which would preclude the granting of summary judgment.

FACTS

On August 26, 1982, Manville, a Delaware corporation and twenty of its affiliates and subsidiaries filed petitions for relief under Chapter 11 of the Code (the "petitions" or "petition"). Manville has continued to operate its businesses as debtor-in-possession pursuant to §§ 1107 and 1108.

Manville and Committee representatives of all major constituencies, including the Equity Committee, have engaged in negotiations and have attempted to reach agreement on essential elements which would provide the foundation for a plan of reorganization. The period of exclusivity during which only the debtor may file a plan of reorganization has been extended periodically pursuant to § 1121(d). The parties have continued to negotiate in good faith and have attempted to arrive at a mutually agreeable settlement.

Manville filed a Plan of Reorganization on November 21, 1983, which was met with less than universal approbation and which is subject to amendment or modification. The process leading to confirmation, however, is well under way. If it were not for the ongoing willingness of opposing factions to seek a consensual or near consensual plan rather than risk an attempt at an imposed plan, a § 1129 confirmation hearing might already have been held.

Committees of creditors representing Manville's major constituencies and equity holders have been appointed and authorized to represent their members as provided for in § 1102 and its pilot district mate § 151102. The Equity Committee was authorized pursuant to an order of this court to retain the law firm of Hahn & Hessen as its counsel. According to the most recent United States Trustee appointment designation dated August 29, 1985 which implements this Court's 1982 order, the Equity Committee is comprised of the following members: (1) Bankers National Life Insurance Company; (2) Centerre Trust Company of St. Louis; (3) Leon B. Dubin; (4) the Independent Insurance Group, Inc.; (5) Raytheon Financial Corporation; (6) Hopper Soliday & Co., Inc.; and (7) Morton J. Macks. A major distinction between the equity and other committees should be noted. This committee's representation uniquely embraces individuals or shareholders who may have voluntarily acquired their interests *after* the filing of the petition. The other committees represent completely involuntary creditors whose inter-

ests existed prior to the filing of the petition.

The Equity Committee's powers derive from the Code and are contained in § 1103(c).[2] This Title 11 reorganization court is the "source court" for the existence and nourishment of the Equity Committee and Dubin as a member of the committee. Dubin's appearance as plaintiff in the Delaware action in a dual capacity cannot help but raise a suggestion of conflict. Dubin may be in breach of his fiduciary obligations in that he owes duties to both the Equity Committee and the debtor. Such a breach is especially egregious to the extent *he as an individual* receives advice and counsel from professionals paid with estate funds.

On August 2, 1985, Manville announced that its Board of Directors and the Legal Representative had approved an agreement on principal elements of a plan of reorganization ("Principal Elements Agreement"). Many of the elements of this agreement will potentially amend or modify the filed plan of reorganization. Within two weeks of the announcement of the Principal Elements Agreement, the Equity Committee filed its motion for retention of the Allmond firm for the purpose of instituting the Delaware Action. Since the last Manville annual shareholders' meeting in May 1982, no shareholder or director has at any time sought to compel the calling of a shareholder's meeting for the years 1983, 1984 or 1985.

On August 19, 1985 Dubin, utilizing the Allmond firm, commenced Civil Action No. 8119 in the Delaware Chancery Court seeking to compel Manville to hold a shareholders' meeting. The Delaware caption refers to Dubin as Plaintiff individually and on behalf of the Equity Committee, but there is no doubt that the Equity Committee is either *the* real plaintiff party in interest, or a plaintiff party in interest. The Equity Committee has made no effort to disassociate itself from the suit. Indeed the Equity Committee's present motions for special counsel retention, funding and summary judgment seek this Court's recognition of the Committee's prime role in the Delaware action. Thus while conceding the need to seek funding and personnel from this Court for a litigating adventure outside the reorganization, it avoids seeking approval for the litigation itself.

CONTENTIONS OF THE PARTIES

The Equity Committee argues that by agreeing to the Principal Elements Agreement, Manville has abandoned the concerns of its preferred and common stockholders, without accounting to shareholders at an annual or special meeting. The Equity Committee argues that this Agreement will "totally emasculate" the common stockholders equity because of provisions in the agreement which provide for the funding of a settlement vehicle with at least 50% and up to 80% of Manville's common stock, depending upon the number and size of claims filed. As a direct result of this Agreement and an articulated fear that it was being excluded from negotiations, the Equity Committee filed its motion to retain special counsel.

The Equity Committee further contends that it may proceed with its Delaware action for the following reasons: 1) § 211(c) of Delaware's General Corporation Law authorizes any shareholder of a Delaware Corporation to compel an annual sharehold-

---

2. Section 1103(c) provides:

  (c) A committee appointed under section 1102 of this title may—
    (1) consult with the trustee or debtor in possession concerning the administration of the case;
    (2) investigate the acts, conduct, assets, liabilities and financial condition of the debtor, the operation of the debtor's business and the desirability of the continuance of such business, and any other matter relevant to the case or to the formulation of a plan;

    (3) participate in the formulation of a plan, advise those represented by such committee of such committee's determinations as to any plan formulated, and collect and file with the court acceptances or rejections of a plan;
    (4) request the appointment of a trustee or examiner under section 1104 of this title; and
    (5) perform such other services as are in the interest of those represented.

ers' meeting when one has not been held in the last thirteen months; 2) Manville's certificate of incorporation and § 1.01 of its by-laws require that an annual shareholders meeting be held in May of each year; 3) § 1103(c)(5) of the Code authorizes statutory committees to "perform such other services as are in the interest of those represented;" and 4) principles of equity permit Manville's common shareholders to exercise their corporate prerogatives. The Equity Committee also challenges this Court's jurisdiction to enjoin the Delaware action as sought by Manville in its complaint.

Manville argues that the Equity Committee's institution of its Delaware action subverts the reorganization process and was commenced as part of a negotitaing strategy in the hope of strengthening its bargaining position with respect to any plan of reorganization. Manville further argues that instead of participating in plan negotiations, the Equity Committee has withdrawn from the Chapter 11 process and is using the Delaware action to interfere with this Court's administration of the case, obstruct attempts to arrive at a consensual plan of reorganization, and jeopardize Manville's ability to emerge from Chapter 11.

For the following reasons, this Court holds that 1) given the present set of facts, the motion for an order approving the retention of the Allmond firm is denied; 2) Dubin and the Equity Committee lack standing to commence the Delaware action; 3) Dubin and the Equity Committee are hereby enjoined from proceeding with the Delaware action; and 4) no genuine issues of material fact exist which prevent the grant of summary judgment in Manville's favor.

DISCUSSION

I. Denial of Motion to Retain and Reimburse the Allmond Firm

  A. The retention sought is not within the purview of the Code or of Delaware Law.

■ Section 1102 of the Code provides for the appointment of creditors' and equi-

ty security holders' committees, and states in subsection (a)(2) that:

> the court may order the appointment of additional committees of creditors or of equity security holders if necessary to assure adequate representation of creditors or of equity security holders. The Court shall appoint any such committee.

The legislative history of this section states that "it provides for the appointment of creditors' and equity security holders' committees, which will be the primary negotiating bodies for the formulation of the plan of reorganization. They will represent the various classes of creditors and equity security holders from which they are selected." H.R.Rep. No. 595, 95th Cong., 1st Sess. 401 (1977). *See also* S.Rep. No. 989, 95th Cong., 2d Sess. 114 (1978), U.S.Code Cong. & Admin.News, pp. 5787, 5900, 5963, 6357.

The Equity Committee was appointed pursuant to an order of this Court on February 14, 1983 to represent the preferred and common shareholders of Manville solely in connection with these reorganization proceedings. As provided for in § 1102(b)(2), the Equity Committee is comprised of the seven largest holders of Manville's equity securities willing to serve. It is a creation of the Code and derives its powers and duties from this body of statutory law.

Section 1103(a) of the Code allows a committee, with the approval of the Court and a majority of its members, to employ attorneys "to represent or perform services" for it. The law firm of Hahn & Hessen was retained by the Equity Committee with this Court's approval to represent or perform services for the Committee. The employment of other attorneys for the sole purpose of commencing shareholder actions in other courts, in which the Equity Committee is not even an independently named party, is not sanctioned by this provision.

Section 1103(c) of the Code lists a committee's powers in a Chapter 11 case as ranging from consulting with the debtor on the administration of the case, to investigating the acts, conduct, liabilities and fi-

nancial condition of the debtor to participating in the formulation of a plan. Section 1103(c)(5) also allows a committee to "perform such other services as are in the interest of those represented." The Equity Committee argues that this section supports its motion for the retention of special counsel. While § 1103 contemplates a committee taking an active role in the reorganization proceedings, it does not grant a committee blanket authority to represent its constituency in matters outside and independent of the bankruptcy case.

Paragraph One of Dubin's Complaint filed in the Delaware Chancery Court states:

> This action is commenced by Plaintiff, individually and on behalf of the Committee of Equity Security Holders of Manville Corporation (the "Equity Committee") established by the United States Bankruptcy Court for the Southern District of New York, and seeks relief under § 211 of the Delaware General Corporation Law in the form of an order requiring defendant to hold an annual meeting of its stockholders for the election of directors.

The Complaint recognizes that the Equity Committee was established pursuant to the Code, and contains the assumption that the Committee itself has a claim for relief under 8 Del.C. § 211 (1953) of the Delaware General Corporation Law. This section provides that upon "a failure to hold the annual meeting ... for a period of thirteen months ... after its last annual meeting, the Court of Chancery may summarily order a meeting to be held upon the application of any stockholder or director." The right to compel a shareholders' meeting is a private one exercisable only by "stockholder[s]" or "director[s]" who meet the § 211(c) requirements. Moreover, the statute provides that the Court of Chancery *may* order a meeting of stockholders to be held, but is not compelled to do so. *See Saving Business Machines Corp. v. Rapifax Corp.*, 375 A.2d 469, 472 (Del.Ch.1977) (§ 211(c) "reposes a discretion in the Court to be exercised in light of the existing circumstances").

The Equity Committee is not a "stockholder" within the meaning of § 211(c). Rather, as recognized by all parties, it is a Title 11 entity representing the interest of Manville's common and preferred stockholders in these reorganization proceedings, and is not empowered by § 211(c) to bring the Delaware action. Since the Equity Committee does not have the necessary authority to bring such an action and the permission of this "source court" was neither sought nor obtained, the Committee's motion to retain estate-financed counsel to continue the Delaware suit must be and is denied.

B. Given the facts of this case, the Code does not provide for the reimbursement of expenses incurred in holding a shareholders meeting.

The Equity Committee seeks reimbursement pursuant to §§ 503(b)(3) and (4) of expenses which "have been customarily incurred by Manville in connection with the holding of annual meetings of shareholders including, but not limited to, printing, mailing, telephone, circulation, professional and related miscellaneous fees and expenses." Even assuming regularity of the procedures, the advance approval by this Court for the reimbursement of such expenses is not contemplated by the Code. Under § 503(b)(3)(D) and (4), the Equity Committee must wait until the end of the case to apply for reimbursement, since it is only at that time that this Court can adequately evaluate the contribution, if any, made by the Equity Committee and its members if it pursued the Delaware Action and held a shareholders' meeting. The contribution required by the Code must be a "substantial contribution." Were this issue presently ripe for determination, this Court would be likely to find that holding a shareholders' meeting now, when negotiations between the parties have been especially fruitful and hitherto unresolvable issues are now viewed as soluable, would not substantially contribute to the Manville reorganization.

1) The Delaware Action is Impeding and Not Contributing to the Manville Reorganization

Once a corporation becomes a debtor under Chapter 11, its directors are no longer allowed to pursue parochial interests but have broader fiduciary obligations which encompass all aspects of the reorganization. *See In re Baldwin-United Corp.*, 43 B.R. 443, 459 (S.D. Ohio 1984). The District Court in *In re Baldwin-United* stated:

It is ... noteworthy that "[t]he rule prevailing in most jurisdictions ... is that when the corporation becomes insolvent, the directors are thereafter considered as trustees for the corporate creditors." 3 *Fletcher Cyclopedia Corporations* § 849 (1945 ed.). It appears, then, that the directors of a Chapter 11 debtor are not fiduciaries of the corporation; rather, they are fiduciaries of the estate, which the debtor in possession holds as trustee for the creditors, 11 U.S.C. § 1107(a). Given that, it is difficult to accept debtors' position that, in effect, there is no difference in the relationship between the debtors and their directors pre- and post-petition, since the nature of the directors' duties has changed from helmsman to guardian.

43 B.R. at 459–60 n. 22. These directors are bound to act in the best interest of the corporation, in good faith, and are answerable for their actions. *Id.* at 459. *See also Automatic Canteen Co. of America v. Wharten*, 358 F.2d 587, 590 (2d Cir.1966) (holding that directors of an insolvent corporation are trustees for the creditors); *Davis v. Woolf*, 147 F.2d 629, 633 (4th Cir.1945) ("The law by the great weight of authority seems to be settled that when a corporation becomes insolvent, or in a failing condition, the officers and directors no longer represent the stockholders, but by the fact of insolvency, become trustees for the creditors ...."); *Lilly v. Ernst*, 113 F.Supp. 178, 181 (S.D.W.V.1952) ("officers and director of an insolvent corporation are trustees for its creditors"). Thus Manville's directors, in negotiating any plan of reorganization, and indeed for as long as Manville remains in Chapter 11, are required by the Code to act as fiduciaries of the estate. Consequently, the claim of stockholders that they have an immediate right or need to elect new directors is anomolous. At this point in the case, *any* directors would have to act not for the narrow interests of shareholders, but as fiduciaries of the estate.

Any attempt by the Equity Committee to alter the fiduciary nature of an insolvent corporation's directors by asserting that Manville is not insolvent fails to accept reality in light of the liabilities faced by the debtor. This Court has previously stated in *In re Johns-Manville Corp.*, 36 B.R. 727 (Bankr.S.D.N.Y.), *leave to appeal denied*, 39 B.R. 234 (S.D.N.Y.1984) that:

it is clear that Manville's liability for compensatory, if not punitive, damages to school authorities is not hypothetical, but real and massive debt. A range of $500 million and to $1.4 billion is the total projected amount of Manville's real debt to the school creditors.

In addition, claims of $425 million of liquidated commercial debt have been filed in this proceeding. The filing also triggered the acceleration of more than $275 million in unsecured public and institutional debt which had not been due prior to the filing.... Manville's present holdings of cash and liquid assets would be insufficient to pay these obligations.

*Id.* at 739–40. The economic reality of Manville's highly precarious financial position due to massive debt has not lessened since before January 1984 when various groups sought to have Manville's petition dismissed. Quite to the contrary, Manville's original estimates of its potential debt are tempered by actual filings of $80 billion in property damage claims alone. There continues to be "justification for Manville to elect a course contemplating a viable court-supervised rehabilitation of the real debt owed by Manville to its real creditors." *Id.* at 740. Manville's present debt makes this Court the appropriate forum to respond to Manville's present and future

financial problems. *See In re Johns-Manville Corp.*, 39 B.R. 234, 236 (S.D.N.Y. 1984).

## II. Dubin, in his individual and representative capacity, may not institute this action in the Delaware courts.

■ This Court has previously stated that "a holder of a claim or an equity interest who serves on a committee undertakes to act in a fiduciary capacity on behalf of the members of the class he represents." *In re Johns-Manville Corp.*, 26 B.R. 919, 924 (Bankr.S.D.N.Y.1983). *See also Woods v. City National Bank and Trust Company*, 312 U.S. 262, 61 S.Ct. 493, 85 L.Ed. 820 (1941); *In re Realty Associates Securities Corp.*, 56 F.Supp. 1008, 1009 (E.D.N.Y.1944) (committee is a fiduciary and owes undivided loyalty and allegiance to members).

Dubin is a Manville stockholder and as such, under appropriate circumstances, may pursue a § 211(c) shareholders' meeting, but he is also a member of the Equity Committee and is a fiduciary to the Committee and the estate. As stated in *In re Johns-Manville Corp.*, "where a committee representative or agent seeks to represent or advance the interest of an individual member of a competing class of creditors or various interests or groups whose purposes and desires are dissimilar, this fiduciary is in breach of his duty of loyal and disinterested service." 26 B.R. at 925.

The private rights of a stockholder in seeking a shareholders' meeting can diverge from the fiduciary obligations which a member of the Equity Committee has in attempting to negotiate a plan which benefits all equity security holders and contributes substantially to the reorganization. Dubin, in his representative capacity, cannot merge his rights as a member of the Equity Committee with his individual rights as a stockholder. Dubin's dual status therefore prevents him from pursuing his private rights as a stockholder when the exercise of these rights collide with his fiduciary obligations to the Committee and the estate.

Similarly, on the record emerging, counsel to the Equity Committee may have a conflict of interest under § 1103(b) in representing the Committee as well as Dubin in his individual capacity.[3] Section 1103(b), prior to its amendment by the Bankruptcy Amendments and Federal Judgeship Act of 1984 ("BAFJA"), provided:

A person employed to represent a committee appointed under section 1102 of this title may not, while employed by such committee, represent any other entity in connection with the case.

The legislative history of § 1103(b) clearly indicates the drafters' concern over potential conflicts of interest, and states:

In order to discourage the practices surrounding election of creditors' committees today and to avoid a serious potential for conflict of interest, the bill *requires* that counsel to the creditors' committee cease any representation of creditors in the individual capacities in connection with the case.

H.R.Rep. No. 595, 95th Cong., 1st Sess. 104–05 (1977). *See also In re Combustion Equipment Associates, Inc.*, 8 B.R. 566, 567–68 (Bankr.S.D.N.Y.1981) ("person employed to represent a committee *may not* while employed by that committee represent any other entity in connection with the case"); *In re Broadcast Management Corp.*, 36 B.R. 519, 520 (Bankr.S.D. Ohio 1983) ("§ 1103(b) was designed to prevent *potential* conflicts of interest, and to avoid even the appearance of impropriety").

Section 1103(b) was subsequently amended in 1984 and now also states that "[r]epresentation of one or more creditors of the same class as represented by the committee shall not per se constitute the representation of an adverse interest." This amendment is effective only as to cases filed ninety days after BAFJA's enactment date of July 10, 1984, and there-

---

**3.** *Transcript,* Sept. 11, 1985, p. 36–37 (on questioning by this Court, Mr. Hahn of Hahn & Hessen and counsel for the Equity Committee stated that he represents the Committee and Dubin individually in these proceedings.)

fore is not applicable to the present case. Nonetheless even though a per se rule is no longer applied, the continuing representation by the Equity Committee's counsel of both Dubin individually and the Committee raises serious possible conflicts of interest which, because of our denial holdings herein, need not be explored further.

III. The Equity Committee and Dubin are Enjoined from Proceeding with the Delaware Action.

A "shareholders' right to control a Chapter 11 debtor-in-possession is not without limitations under the Bankruptcy Code." *In re Lifeguard Industries, Inc.,* 37 B.R. 3, 17 (Bankr.S.D. Ohio 1983) (court refused to approve new management of a debtor-in-possession proposed by a newly-elected board of directors). In *In re Alrac Corp.,* 1 B.C.D. 1504 (Bankr.D.Conn.1975), the court stated:

The mere pendency of a petition in reorganization under the Bankruptcy Act does not deprive stockholders of their right to hold an annual meeting, *In re J.P. Linahan, Inc.* (2 Cir., 19[40]) 111 F.2d 290 [590] 42 Am.B.R. (N.S. 470). However, that right is not absolute. "When other considerations require a suspension of it, they are to be given effect." *In re Public Service Holding Corporation* (2 Cir., 1944) 141 F.2d 425, 55 Am.B.R. (N.S. 529).

The basic question, then, is whether "other considerations" exist which suggest that the time of the meeting should be postponed. In the judgment of this court, such considerations do exist.

*Id.* at 1505. The general rule found in *In re J.P. Linahan, Inc.* is that "the right of the majority of stockholders to be represented by directors of their own choice and thus to control corporate policy is paramount and will not be disturbed unless a clear case of abuse is made out." 111 F.2d 590, 592 (2d Cir.1940). The right to compel a shareholder's meeting is not absolute and the existence of various circumstances, including the parties' progress in plan negotiations, can militate against allowing the meeting. *See In re Public Service Holding Corp.,* 141 F.2d 425, 426 (2d Cir.1944) ("other considerations" may require a suspension of the stockholder's right to an annual meeting).

In *In re Potter Instrument Co., Inc.,* 593 F.2d 470 (2d Cir.1979), the Second Circuit cited the *Linahan* case approvingly, but proceeded to state:

Under this standard, the bankruptcy court and the district court were justified in denying appellant's petition for a special meeting to elect new directors in view of the finding that such an election might result in unsatisfactory management and would probably jeopardize both [the debtor's] rehabilitation and the rights of creditors and stockholders— sounding the "death knell" to the debtor as well as to appellant himself.

*Id.* at 475.

In the present case, "other circumstances" exist which require the denial of the holding of a shareholders' meeting as provided for in *Public Service* and *Potter.* The Equity Committee has filed its motion for a meeting just when a major breakthrough in the case, the drafting of the Principal Elements Agreement, has been reached after three years of fractious negotiating. Its present conceded objective is to strengthen its bargaining position and provide additional leverage. At this juncture the effort comes at the expense of an orderly reorganization and the interests of all parties. Simply, the Equity Committee is using the Delaware action to enhance and elevate its role over those other constituencies who are statutorily stayed from dealing with Manville in a non Chapter 11 setting (see § 362) and who enjoy a higher position in the distribution scheme of bankruptcy. The Equity Committee has admitted that:

Manville has alleged nothing more than that the Equity Committee rejects the Principal Elements Agreement made by the incumbent Board with the Legal Representative and desires a shareholders' meeting to enable shareholders if they wish, to elect a Board which may in turn

act to reconsider the Principal Elements Agreement. *To this the Equity Committee pleads guilty.* Shareholders have the right to elect a Board. This may be a new Board; and it may be a new Board because shareholders are not satisfied with the Principle Elements Agreement. Reply Memorandum of Law of the Committee of Equity Security Holders, Sept. 10, 1985, p. 5. The Equity Committee asserts that it has no complaint with the day to day and overall management of Manville's businesses by the current board of directors.[4]

There is no reason for this Court to countenance the waste of this estate's resources and thereby jeopardize the reorganization process. The Bankruptcy Court in the *Baldwin-United* case, recently faced a similar motion by that debtor's security holders' committee to compel a shareholders meeting and retain counsel for that purpose. In denying the committee's application to retain counsel, Judge Newsome stated:

> if there's some good reason for [holding a shareholders' meeting], I would be more than happy to listen to it, but I think I do have a responsibility to avoid what would undoubtedly be a chaotic situation generated by a proxy fight in the middle, in the very midst and at the very crucial point of a reorganization plan being submitted and up for confirmation.

*Hearing Transcript,* Aug. 21, 1985, p. 60 (Bankr.S.D.Ohio).

The Equity Committee maintains that it has an absolute right to a shareholders meeting under the *Linahan* tradition and *Saxon Industries, Inc. v. NKFW Partners,* 488 A.2d 1298, 1301 (Del.1985) ("stockholders' right to have a meeting convened is 'virtually absolute' "). The court in *Saxon* tempered its seemingly absolutist approach by stating "[n]onetheless, a stockholder's prima facie case can be defeated by an adequate affirmative defense." *Id.* at 1301. Determining when an adequate affirmative defense or other conditions exist requires a case by case analysis and an appropriate balancing of bankruptcy and general corporate law principles. *Id.* at 1302.

The moving party relies heavily on *In re Lionel Corp.,* 30 B.R. 327 (Bankr.S.D.N.Y. 1983) and *In re Saxon Industries,* 39 B.R. 49 (Bankr.S.D.N.Y.1984) as support for its alleged right to retain special counsel. These two cases are distinguishable. In both *Lionel* and *Saxon,* the bankruptcy court assumed that the equity security holders committees had authority under the Code to retain special counsel. The issue of committee authority under § 1103 to pursue actions to compel meetings was never addressed. Moreover, the cumulative record in this case contains findings which were lacking in the *Lionel* and *Saxon* bankruptcy cases. In *Lionel,* for example, the court stated that "there is nothing in the record that demonstrates how the reorganization is going to be impeded here by the holding of an annual meeting." 30 B.R. at 330. In *Saxon,* the court stated "the issue of whether the insolvency of Saxon and the proximity to confirmation should preclude the holding of a shareholder's meeting is not before the court at this time." 39 B.R. at 50. At this time in the Manville proceedings, any shareholder meeting and ensuing proxy fight has the potential to derail the entire Manville reorganization with devastating consequences or at least to delay or halt plan negotiations. G. Earl Parker, Senior Vice President of Manville, states in his affidavit that "[n]o juncture of these proceedings has been more critical or sensitive than that which now exists.... The consequences flowing from yet another stalemate would place in jeopardy the ability of the Debtors ever to confirm a plan of reorganization or to pay its just debts." *Affidavit,* Sept. 6, 1985, p. 3–4. The essential thrust of this answering affidavit has not been effectively controverted. (See discussion on Rule

---

4. Section 1104 of the Code provides an expeditious method for expressing dissatisfaction with the control body of a Chapter 11 debtor by providing the mechanism for the appointment of a Trustee. The Committee has eschewed this course of action although it is plainly displeased with those fiduciaries in charge of this corporation's governance.

56, Federal Rules of Civil Procedure and Local Rule 3(g) hereinafter).

Furthermore, the Delaware Supreme Court in *Saxon* recognized that the Bankruptcy Court had previously approved the filing of the action in the Chancery Court. Thus the Delaware Court dealt essentially with the rights to a shareholders meeting under § 211 of the Delaware General Corporation Law and did not consider the interplay of 8 Del.C. § 303(a) (1953) (the Delaware reorganizational yielding statute). Section 303(a) provides:

Reorganization under a statute of the United States; effectuation.

(a) Any corporation of this State, *a plan of reorganization of which, pursuant to any applicable statute of the United States relating to reorganizations of corporations, has been or shall be confirmed* by the decree or order of a court of competent jurisdiction, may put into effect and carry out the plan *and the decrees and orders of the court or judge relative thereto and may take any proceedings and do any act provided in the plan or directed by such decrees and orders, without further action by its directors or stockholders. Such power and authority may be exercised, and such proceedings and acts may be taken, as may be directed by such decrees or orders, by the trustee or trustees of such corporation appointed in the reorganization proceedings* (or a majority thereof), *or if none be appointed and acting, by designated officers of the corporation, or by a Master or other representative appointed by the court or judge, with like effect* as exercised and taken by unanimous action of the directors and stockholders of the corporation. (emphasis supplied)

The Manville reorganization comes within the purview of § 303. Manville has made great strides in formulating and negotiating a plan of reorganization which is well on its way to being confirmed. A plan has been filed and the protagonists with the exception of the Equity Committee have acknowledged to the court that re-

maining hurdles are not insurmountable. *See Transcript*, Sept. 4, 1985, p. 5–6 (Comment by Leon Silverman that "discussions and negotiations are going forward with the various constituencies with respect to a Plan of Reorganization and that documents are being prepared;" no objection was voiced by the Equity Committee). The holding of a shareholders' meeting at this juncture will seriously jeopardize any attempt at successfully reorganizing Manville. In the present case, therefore, Manville would appear to have more than an adequate affirmative defense to the § 211(c) action on several grounds including § 303(a).

1. Section 105(a) of the Code and 28 U.S.C. § 959(a) authorize this Court to enjoin proceedings when the reorganization will be obstructed.

■ Section 105(a) of the Code provides that "[t]he court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title." It authorizes this Court to utilize a wide range of powers and shape appropriate relief. According to *Collier's*, "[s]ection 105 is an omnibus provision phrased in such general terms as to be the basis for a broad exercise of power in the administration of a bankruptcy case." 2 *Collier on Bankruptcy* ¶ 105.01 at 105–1 (15th ed. 1985).

The Second Circuit in *In re Baldwin-United Corp.*, 765 F.2d 343, 348 (2d Cir. 1985) stated that "the Bankruptcy Court has authority under Section 105 broader than the automatic stay provisions of section 362 and may use its equitable powers to assure the orderly conduct of the reorganization proceedings." (citing *Johns-Manville Corp. v. Asbestos Litigation Group, et al*, 40 B.R. 219 (S.D.N.Y.1984)). Section 105(a) contemplates the court's use of injunctive relief in precisely those instances where parties are attempting to obstruct the reorganization. *See In re Professional Sales Corp.*, 48 B.R. 651, 660 (Bankr.N.D.Ill.1985) ("§ 105(a) is appropriate where there is a threatened harm to, or interference with the sound administration

of the estate."); *In re Davis,* 730 F.2d 176, 183–84 (5th Cir.1984) (Section 105 "includes the authority to enjoin litigants from pursuing actions pending in other courts that threaten the integrity of the bankrupt's estate.").

The carefully timed Delaware action will have an adverse impact on the Debtor's ability to coalesce with others to formulate an acceptable Chapter 11 plan resulting in irreparable harm and the impeding of the negotiation process.

Title 28 U.S.C. § 959(a) supplements the equitable powers of this Court granted by § 105 of the Code. Section 959(a) provides:

Trustees, receivers or managers of any property, including debtors in possession, may be sued, without leave of the court appointing them, with respect to any of their acts or transactions in carrying on business connected with such property. *Such actions shall be subject to the general equity power of such court so far as the same may be necessary to the ends of justice,* but this shall not deprive a litigant of his right to trial by jury. (emphasis added).

Although this section specifically permits suits against a debtor-in-possession like Manville "without leave of court ... with respect to any of their acts or transactions in carrying on business connected with such property," it states that these actions are subject to the "general equity power of [this] Court." Suits may be enjoined if the Court "finds that the action would embarrass, burden, delay or otherwise impede the reorganization proceedings." *In re Investors Funding Corp.,* 547 F.2d 13, 16 (2d Cir.1976).

The Equity Committee's desire for this Court's blessing, at this time, for the funding of the struggle over control of the corporate entity operating under the aegis of this court will not be permitted. The framework provided in the Code for arriving at a plan of reorganization may not be circumvented under the circumstances presented. Dubin and the Equity Committee are therefore enjoined from proceeding with their Delaware action.

### 2) This Court has the necessary jurisdiction to decide the issues raised in Manville's Complaint.

Title 28 U.S.C. §§ 1334 and 157 provide this Court with the necessary jurisdiction to hear Manville's complaint. 28 U.S.C. § 157(b)(1) states that:

Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments.

Section 157(b)(2) provides a list, albeit non-inclusive, of proceedings which are considered core. The Equity Committee has challenged this Court's jurisdiction, claiming that the subject matter of Manville's complaint is non-core and that under § 157(c)(1) this Court does not have the statutory authority to enter a final judgment.

Plainly the subject matter of the Manville complaint is a core proceeding under 28 U.S.C. § 157(b)(2) over which this Court has jurisdiction. The Manville complaint seeks to preserve the reorganization process as a whole. Pursuant to § 157(b)(2)(A), the complaint encompasses "[m]atters concerning the administration of the estate."

In addition, the Equity Committee must be aware of the unrealistic stance it takes when it argues that this Court has the authority over retention, compensation and reimbursement of special counsel yet it seeks to prevent this Court from evaluating the nature and effect of the litigation and its cost on Manville's reorganization.

### IV. The Equity Committee's Motion for Summary Judgment is Denied.

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Bankruptcy Rule 7056, the Equity Committee contends that no genuine issues of material fact exist with respect to the issues in Manville's complaint and that as a matter of law it is entitled to judgment. *See Burtnieks v.*

*City of New York*, 716 F.2d 982 (2d Cir. 1983). In opposition to the motion, Manville has submitted the affidavit of G. Earl Parker, an officer, director and key member of management's negotiating team. The affidavit, which essentially remains unchallenged, rebuts the Committee's contention that it is entitled to judgment, and relates the dangers and irreparable harm which would result from such a grant. Local Rule 3(g) for the Southern District of New York also requires that:

there shall be annexed to the notice of motion a separate, short and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried. Failure to submit such a statement constitutes grounds for denial of the motion.

The moving party did not submit a 3(g) statement. The fact that this 3(g) statement is missing from the Equity Committee's papers alone provides grounds for denial of the motion. Moreover, even though genuine issues of material fact do not exist, the Equity Committee is not automatically entitled to judgment in its favor. *Schwabenbaur v. Board of Education*, 667 F.2d 305 (2d Cir.1981).

V. Genuine Issues of Material Fact Are Not Present Which Would Preclude the Grant of Summary Judgment in Manville's Favor.

■ Manville has not specifically filed a motion for summary judgment on the relief sought in its complaint. The parties, however, concede that the posture of this case, as well as Federal Rule of Civil Procedure 56 and 54(c),[5] allow this Court to grant or deny summary judgment to either Manville or the Equity Committee in whole or in part. The Southern District of New York in *F. & M. Schaefer Corp. v. Electronic Data Systems*, 430 F.Supp. 988 (S.D.N.Y. 1977), *aff'd*, 614 F.2d 1286 (2d Cir.1979) stated:

Under Rule 54(c), Fed.R.Civ.P., a federal court has the power to grant appropriate relief to the winning party even if not demanded in the pleadings. *U.S. v. Maryland Casualty Co.*, 384 F.2d 303 (2d Cir.1967); *Lewis v. Dansker*, 68 F.R.D. 184 (S.D.N.Y.1974). The scope and form of the injunction should suit the circumstances of the case and the needs of the public interest. *Bowles v. Leithold*, 60 F.Supp. 909 (E.D.Pa.1945), *aff'd*, 155 F.2d 124 (3d Cir.1945).

*Id.* at 983. The standard for determining whether an injunction should be issued is "whether there is a reasonable likelihood that the wrong will be repeated." *SEC v. Manor Nursing Centers, Inc.*, 458 F.2d 1082, 1100 (2d Cir.1972). *See also United States v. W.T. Grant Co.*, 345 U.S. 629, 633, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1954) (for the court to grant relief, "[t]he necessary determination is that there exists some cognizable danger of recurrent violation"). Upon the record before me, it is clear that the grant of summary judgment in favor of Manville which will enjoin the Equity Committee and Dubin from proceeding in their present Delaware action is appropriate and necessary to prevent irreparable harm to this reorganization.

CONCLUSION

For these reasons, this Court denies the Equity Committee's motion for retention of special counsel, funding and summary judgment. Furthermore, in accordance with the grant of judgment in favor of Manville, the Equity Committee and Dubin, jointly and severally, are stayed, restrained and enjoined from the prosecution of the Delaware action as is sought in the complaint.

It is SO ORDERED.

---

5. Rule 54(c) of the Federal Rules of Civil Procedure provides in part that "every final judgment shall grant the relief to which the party in

whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings."