**In re PHAR–MOR, INC., Debtors and Debtors-in-Possession.**

**Bankruptcy No. 92–41599.**

United States Bankruptcy Court, N.D. Ohio.

March 29, 1993.

**925**

Michael A. Gallo, Nadler, Nadler & Burd-
man, Youngstown, OH, Robert J. White,
O'Melveny & Myers, Los Angeles, CA, for
debtors.

Stuart Hertzberg, and I. William Cohen,
Pepper, Hamilton & Scheetz, Detroit, MI,
Harry W. Greenfield, Buckley King & Blu-
so, Cleveland, OH, for the Unsecured Cred-
itors' Committee.

Shawn M. Riley, Jones, Day, Reavis &
Pogue, Cleveland, OH, for Bank Lenders.

John J. Jerome, Milbank, Tweed, Hadley
& McCloy, New York City, for the Note-
holders.

John J. Dilenschneider, Squire, Sanders
& Dempsey, Columbus, OH, for the Unoffi-
cial Committee of Equipment Lenders and
Lessors.

Brad Eric Scheler, Fried, Frank, Harris,
Shriver & Jacobson, New York City, Stuart
A. Strasfeld, Roth, Stephens, Blair, Rob-
erts & Co., Youngstown, OH, for objectors.

M. Scott Michel, Cleveland, OH, U.S.
Trustee.

## MEMORANDUM OPINION and ORDER

WILLIAM T. BODOH, Bankruptcy
Judge.

The cause before the Court is the motion
of Phar–Mor, Inc. and 15 affiliated entities
(collectively, "Debtors") to prohibit the
transfer of certain stock in Debtors until
June 30, 1993. An objection was filed by
Westinghouse Credit Corporation and First
Westinghouse Capital Corporation (collec-
tively, "Objectors"). Arguments were
heard on February 4, 1993.

The Court made several preliminary de-
terminations at the conclusion of the hear-
ing. It found that any transfer of Debtors'
stock would be subject to the automatic
stay provisions of 11 U.S.C. § 362, and
treated the objection as a motion for relief
from stay. The Court further stated it
would fully review the pleadings, statutes
and other authority and precedent and is-
sue a final determination. The parties sub-
sequently entered into a stipulation re-
questing that the Court defer its consider-
ation of the objection as a motion for relief
from stay in order to conduct discovery,
subject to the rights of the parties to re-
store the motion for relief from stay to the
Court's calendar upon 30–days' written no-
tice. The parties further stipulated that
this was not intended as a request to defer
the Court's final ruling on the instant mo-
tion. The Court approved the stipulation
on March 4, 1993.

The Court has jurisdiction over this pro-
ceeding pursuant to 28 U.S.C. § 1334. This
is a core proceeding under 28 U.S.C.
§ 157(b)(2)(A). This opinion constitutes the
Court's findings of fact and conclusions of
law pursuant to the requirements of Fed.
R.Bankr.P. 7052.

### FACTS

Debtors filed Chapter 11 petitions on Au-
gust 17, 1992 and continue to operate as
Debtors-in-Possession. Debtors' equity
capitalization includes 200,000,000 autho-
rized shares of common stock, of which
50,529,405 shares were outstanding as of
August 31, 1992. Debtors currently have
available a net operating loss carryforward
("NOL") of approximately $300 million
based on past operating losses. 26 U.S.C.
§ 172(a) permits the use of NOL's to offset
future income, subject to certain limita-
tions. One such limitation is 26 U.S.C.
§ 382(a), which limits the NOL deduction
when a corporation experiences a change of
ownership. The statute provides that a
change of ownership occurs where the per-
centage of stock owned by one or more 5%
shareholders increases by more than 50%
over the lowest percentage owned by such
shareholders at any time during a three-
year moving test period.

Debtors estimate that an ownership shift
of 36–44% has occurred during the current

applicable test period. (Sniderman Affidavit at 4). If an ownership change occurs, Debtors' ability to take the NOL and the resultant cash flow will be severely reduced. (Sniderman Affidavit at 3). Debtors represent that the NOL is a valuable asset of the estate and the cash flow is "a key to its successful reorganization." (Meyers Affidavit at 3).

Objectors own 3,624,359 shares of Debtors' common stock. Objectors do not make any claim in their pleadings that they seek to sell some or all of these shares and therefore trigger the 50% ownership change. The objection rests on both procedural and substantive bases.

### DISCUSSION

■ Two contentions of Objectors can be disposed of initially. Objectors challenge the form of Debtors' motion, contending that a request for injunctive relief must be brought as an adversary proceeding under Fed.R.Bankr.P. 7001. Although Debtors' request is couched as a motion for an injunction, its thrust is to enforce the automatic stay. A motion is an appropriate method of bringing the issue before the Court. Because Debtors are proceeding under § 362(a), they need not meet the more stringent requirements for the granting of a preliminary injunction of Fed. R.Civ.P. 65.

> The requirements for enforcing an automatic stay under 11 U.S.C. § 362(a)(3) do not involve such factors as lack of an adequate remedy at law, or irreparable injury, or loss and a likelihood of success on the merits. The key elements for a stay ... are the existence of property of the estate and the enjoining of all efforts by others to obtain possession or control of property of the estate.

*In re Golden Distribs., Inc.,* 122 B.R. 15, 19 (Bankr.S.D.N.Y.1990).

■ Secondly, Objectors argue that the NOL is not property of the estate. Although the issue has not been addressed in this Circuit, the Court finds that NOL's are property of the estate under the broad language of 11 U.S.C. § 541(a)(1) as a power or right which may be exercised by a debt-

or for its own benefit. Accord *In re Prudential Lines, Inc.,* 107 B.R. 832 (Bankr. S.D.N.Y.1989), *aff'd* 119 B.R. 430 (S.D.N.Y. 1990), *aff'd* 928 F.2d 565 (2d Cir.), *cert. denied* —— U.S. ——, 112 S.Ct. 82, 116 L.Ed.2d 55 (1991).

Section 362(a)(3) provides that the filing of a petition under Chapter 11 operates as a stay of "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." The focus of the parties' dispute is whether the sale of stock, which would trigger an ownership change, is an exercise of control over the NOL, which is property of the estate.

The *Prudential Lines* case is the authority most legally and factually relevant to the Court's determination. In *Prudential Lines,* the debtor's parent company wished to take a worthless stock deduction in the debtor's stock, eliminating the debtor's ability to make use of a NOL. The debtor and unsecured creditors' committee had each filed competing reorganization plans which made use of the NOL. In the bankruptcy court opinion, upheld throughout the appellate process, Judge Schwartzberg discussed the legislative background of § 362(a)(3).

> [T]he control provision of § 362(a)(3) is to be defined by the underlying congressional purposes of preventing dismemberment of the estate and assuring orderly distribution.
>
> . . . . .
>
> Section 362(a)(3), however, is designed to afford additional protection permitting the bankruptcy process to work by enabling a debtor to keep estate property intact during the process at least until it becomes apparent that a feasible reorganization cannot be achieved in a reasonable period of time.

*Id.,* 107 B.R. at 842.

The court further found that the impact the claimed worthless stock deduction had on the NOL constituted an "exercise of control" which was prohibited by the automatic stay.

> The claiming of a worthless stock deduction having the effect of terminating po-

tential use of loss carryovers ... dismembers the estate by eliminating a potential that may be of benefit to creditors. That the effect is due to the legal consequences of the act is of no importance.

*Id.* The instant situation is somewhat more ethereal than in *Prudential Lines.* Objectors have not stated any intent to sell their stock, and Debtors have not shown that a sale is pending which would trigger the ownership change. What is certain is that the NOL has a potential value, as yet undetermined, which will be of benefit to creditors and will assist Debtors in their reorganization process. This asset is entitled to protection while Debtors move forward toward reorganization.

Debtors' arguments also find support in *In re Johns–Manville Corp.,* 52 B.R. 879 (Bankr.S.D.N.Y.1985). That case involved whether shareholders could be enjoined from calling a shareholders' meeting. The court found that the rights of shareholders could be restricted if other considerations, such as the impact on the reorganization and on all parties in interest, merited a finding that injunctive relief was warranted. *Id.* at 887–88.

Objectors rely on *Matter of Calamity Jane's, Inc.,* 22 B.R. 5 (Bankr.D.N.J.1982). That case involved a request for substitution of counsel for debtor, triggered by a state court divorce decree which transferred 51% of the shares of the debtor from the majority shareholder to his former wife, the minority shareholder. The corporation was closely held and the stock sale itself was the focus of the opinion, not what impact such sale would have on another asset of the estate as in *Prudential Lines* or the instant proceeding. The court recognized the limitations of its decision when it commented "[t]he Code provides other remedies to deal with transfers of stock ... where such a transfer would adversely affect the rehabilitative process." *Id.* at 7. The Court does not find this decision as persuasive as the *Prudential Lines* decision.

 The Court finds that at this juncture, the sale of stock is prohibited by § 362(a)(3) as an exercise of control over the NOL, which is property of the estate. Because the Court is aware of the adverse situation this may create for Debtors' shareholders, this opinion does not disturb the right of any shareholder to move for relief from the automatic stay to sell or transfer their shares prior to June 30, 1993. Each such motion will be considered on its individual merits. In keeping with the purpose of § 362(a)(3) to protect estate assets for the benefit of *all* creditors, analysis of any requested sale or transfer will require a balancing of the interests of all creditors and equity security holders in preserving the NOL against the interest of the individual applicant in realizing a significant benefit from the sale or transfer. In addition, the Court will consider the impact of the sale or transfer on the Debtors' reorganization process.

Debtors' motion is sustained for the purpose of enforcing the automatic stay against sales or transfers of Debtors' stock until June 30, 1993, subject to the Court's ability to consider any such proposed sale or transfer upon the filing of an appropriate motion. All pending objections are overruled.

**IT IS SO ORDERED.**