**In re EAGLE–PICHER INDUSTRIES, INC., et al., Debtors.**

**Bankruptcy No. 1–91–00100.**

United States Bankruptcy Court,
S.D. Ohio,
Western Division.

April 28, 1994.

Stephen Karotkin, Weil, Gotshal & Manges, New York City, Edmund J. Adams, Frost & Jacobs, Cincinnati, OH, for debtors.

Carolyn J. Buller, G. Christopher Meyer, Squire, Sanders & Dempsey, Cleveland, OH, for the Unsecured Creditors' Committee.

Kevin E. Irwin, Keating, Muething & Klekamp, Cincinnati, OH, for the Injury Claimants' Committee.

Claude D. Montgomery, Marcus Montgomery Wolfson & Burten, P.C., New York City, Irving Harris, Harris, Harris & Field, Cincinnati, OH, for the Equity Security Holders' Committee.

William T. Hayden, Cohen, Todd, Kite & Stanford, Cincinnati, OH, for the co-defendants of the debtors in asbestos personal injury lawsuits.

Daniel M. Katlein, Dickinson, Wright, Moon, VanDusen & Freeman, Detroit, MI, for NBD Bank, N.A., agent for the debtors' lending consortium.

## ORDER ON OBJECTION TO FEES FOR PERIOD SEPTEMBER 1, 1993—DECEMBER 31, 1993

BURTON PERLMAN, Chief Judge.

In connection with the quarterly review by the court of fee applications by professionals in these consolidated Chapter 11 cases, the official Injury Claimants Committee ("ICC") filed a limited objection to the fee applications of Marcus Montgomery Wolfson & Burten ("MMWB") and Pacholder Associates, Inc. ("Pacholder"). MMWB is counsel to the official Equity Committee, while Pacholder

has been retained as financial advisor to that committee.

This court has jurisdiction of this matter pursuant to 28 U.S.C. § 1334(b) and the General Order of Reference entered in this District. This is a core proceeding arising under 28 U.S.C. § 157(b)(2)(A).

The relevant facts may be briefly stated as follows. On November 10, 1994, debtors, the ICC, and the Legal Representative for Future Claimants, announced that they had entered into a term sheet for a plan of reorganization whereby all or substantially all the common stock of reorganized Eagle–Picher would be issued to a trust for the benefit of asbestos claimants. In connection with the execution of that term sheet, debtors issued a news release which disclosed that debtors would record a prepetition liability with respect to asbestos personal injury claims of approximately $1.5 billion. The New York Stock Exchange thereupon commenced its procedures for the delisting of debtors' common stock which, for some years, had been listed there. Debtors decided to take no steps to impede this action by the New York Stock Exchange. The Equity Committee, however, did undertake to oppose delisting. At the request of the Equity Committee, debtors asked for a hearing before a committee of the Board of Directors of the Exchange. At the time of the hearing on the instant fee application, such hearing had not been held, although the Equity Committee had filed a memorandum with the Exchange.

On these facts, the ICC objects to compensation for MMWB and Pacholder to the extent that time and effort was expended in opposing delisting of Eagle–Picher stock. The ICC says that the work done does not meet the test of 11 U.S.C. § 330 that services rendered by a professional be actual and necessary. No issue is made that the services were actually rendered, but the ICC points out that in order to be necessary, services must be performed "in furtherance of an official committee's duties under section 1103." *In re Heck's Properties, Inc.*, 151 B.R. 739, 745–46 (S.D.W.Va.1992); *see also In re Pettibone Corp.*, 74 B.R. 293, 308 (Bankr.N.D.Ill.1987). Those powers are set forth in 11 U.S.C. § 1103(c):

\* \* \* \* \* \*

(c) A committee appointed under section 1102 of this title may—

(1) consult with the trustee or debtor in possession concerning the administration of the case;

(2) investigate the acts, conduct, assets, liabilities, and financial condition of the debtor, the operation of the debtor's business and the desirability of the continuance of such business, and any other matter relevant to the case or to the formulation of a plan;

(3) participate in the formulation of a plan, advise those represented by such committee of such committee's determinations as to any plan formulated, and collect and file with the court acceptances or rejections of a plan;

(4) request the appointment of a trustee or examiner under section 1104 of this title; and

(5) perform such other services as are in the interest of those represented.

\* \* \* \* \* \*

It is the contention of the ICC that time and effort spent by counsel for the Equity Committee in opposing delisting does not fall within these powers.

█ In opposing the objection, the Equity Committee argues that the services rendered in opposing delisting were both actual and necessary and within the mandate of 11 U.S.C. § 1103(c). The Equity Committee dwells at considerable length on what is undoubtedly the fact, that delisting is disadvantageous to shareholders of Eagle–Picher because it renders the stock less liquid. To oppose the contention of the ICC that work opposing delisting is "independent of and unrelated to" the bankruptcy cases, which is in our view the pivotal issue in the present controversy, the Equity Committee says that there will be a price erosion unrelated to the debtors' financial condition because of the delisting, and this will interfere with the ability of shareholders to participate in the plan negotiation process.

A distinction must be made between services which benefit shareholders, and services which benefit shareholders for which the bankruptcy estate should pay. We have no doubt that it benefits shareholders qua

shareholders if the security they hold is listed on an exchange. Efforts to secure that result are beneficial to shareholders. We are, however, unable to perceive how it impacts on the effort of the Equity Committee to participate in plan formulation in the bankruptcy case whether the shares of debtor are listed on an exchange or not. The Equity Committee is in place. Its counsel is in place. Assisting professional services are in place. There is no reason to believe that any of this will in any way be affected by a delisting of stock. Liquidity and ease of transfer of shares is, of course, a concern of shareholders, but it is for them, not this bankruptcy estate, to bear any expense involved in efforts to maintain liquidity. As stated in *In re Johns–Manville Corp.,* 52 B.R. 879, 884 (Bankr.S.D.N.Y.1985), *aff'd,* 60 B.R. 842 (S.D.N.Y.1986), *rev'd on other grounds,* 801 F.2d 60 (2d Cir.1986), § 1103 "does not grant a committee blanket authority to represent its constituency in matters outside and independent of the bankruptcy case." In *Heck's Properties,* the District Court affirmed the bankruptcy court's denial of compensation to counsel for the Equity Committee for work relating to (i) the committee's efforts to intervene in an action filed in District Court by the debtor against a third-party defendant and (ii) a state court action that was commenced by the Equity Committee without bankruptcy court approval, against the debtor's officers and directors. 151 B.R. at 748–50, 763–64. We find this to be persuasive authority in support of the conclusion we have reached.

The limited objection of the ICC to the fee application of MMWB is sustained.

At the hearing on this objection, a difference of opinion emerged as to the amount of time spent by MMWB on the delisting question. The ICC had computed the time at 82.6 hours, while the Equity Committee asserted that 62 hours had been spent. The ICC and MMWB are directed to confer about this disparity. If they are unable to agree within ten (10) days of the date of this order, so informing the court within that time frame, the ICC will submit to the court a statement in support of its contention, noting the time entries to which MMWB objects.

 Further, the court declines to sustain the objection to the extent that it is directed at Pacholder. Pacholder, under the terms of its engagement, renders services to the Equity Committee as requested, and is not called upon to make judgments about the relevance of the work its principal calls upon it to perform.

So Ordered.